ROBINSON *against* AMES, impleaded with ALLEN.

Where there      THIS was an action of *assumpsit*, on a bill of exchange
are *any* funds
of the drawer  drawn by the defendants, merchants in *Augusta*, in the state
in the hands of  of *Georgia*, on the 6th of *March*, 1819, upon *Townsend*
the drawee, or
if, at the time  and *White*, merchants, in the city of *New-York*, for five
the bill is
drawn, there   hundred dollars, payable sixty days after sight, to *Starr* and
are circum-
stances suffi-  *Ross*, or order, by whom it was indorsed to the plaintiff.
cient to induce  The cause was tried at the *New-York* Sittings, in *June*,
a reasonable
expectation    1821, before the Chief Justice. The bill was presented
that the bill
will be accept-  for acceptance on the 20th of *May*, 1819, and notice of
ed, or paid, the  non-acceptance sent, by mail, on the next day, to the
drawer is enti-
tled to *notice*  drawers, by a notary, directed to them at *Augusta*, in
of its disho-
nour; and to   *Georgia*. On the 22d of *July*, 1819, the same notary
due diligence  presented the bill to the drawers for payment, which they
in the *present-
ment* of it.   refused, alleging the want of funds. Notice of non-pay-
As, where
there were   ment was sent through the post-office, two or three days af-
dealings, and
an open ac-
count between the drawer and the drawee, and the latter had received considerable shipments
of *cotton* from the drawer, and accepted previous bills, but on account of a fall in the price of
the cotton, its value was not equal to the amount of the accepted bills, and the *last* bill drawn
was, therefore, protested for *want of funds*: Held, that the drawer was entitled to notice; and
notice, sent by mail, the next day after protest, was sufficient.

Where a bill is drawn payable at sight, or a certain number of days after sight, there is no
fixed rule for its presentment; but the holder is bound to use due diligence, and put the bill into
circulation.

terwards, addressed to the defendants, at *Savannah*, in *Georgia*.

*Townsend*, one of the drawees, who was a witness for the plaintiff, testified, that on the 20th of *May*, 1819, the drawees had no funds in their hands, belonging to the defendants, and had then accepted drafts to the amount of three or four thousand dollars more than they had funds of the defendants, and that this was the last bill drawn by them. That the want of funds proceeded from a fall in the price of cotton shipped by the defendants, to *T.* and *W.* ; that by an agreement between them, the defendants were authorized to make purchases of cotton, on the joint account of themselves and *T.* and *W.*, and to draw on *T.* and *W.* for the amount. That on the 26th of *April*, 1819,. *T.* and *W.* stopped payment. That after the 6th of *March*, and before the failure of *T.* and *W.*, they had received a considerable amount of cotton from the defendants, but had accepted the bills of the defendants to a larger amount than the value of the cotton so shipped, and the difference was owing to a loss on the cotton shipped ; that if the defendants were to pay all the bills, *T.* and *W.* would owe them five or six thousand dollars ; but if *T.* and *W.* were to take up all the bills, the drawees would owe them three or four thousand dollars. It was proved, that the mail, which left *Augusta* about the 10th of *March*, was lost ; and that the mail goes from that place to *New-York*, in ten days, and leaves the former place three times a week. That where bills are remitted by merchants, it is the usual course to send the bill by one mail, and to advise by the next.

A verdict was taken for the plaintiff, for five hundred and seventy-two dollars, subject to the opinion of the Court on a case, as above stated.

*A. Tallmadge* and *P. Ruggles*, for the plaintiff, contended, 1. That the bill, having been duly presented, and protested for non-acceptance, and notice thereof given, the action might be maintained, without showing a presentment for payment. A notice of non-acceptance is required to enable the drawer to draw his funds out of the hands of the

drawee. There is, then, no reason for requiring a notice of non-payment.

2. That there was due notice of the non-acceptance of the bill, at least, *prima facie ;* (*Miller* v. *Hackley,* 5 *Johns. Rep.* 375.) and it was not necessary for the plaintiff to aver or prove a protest for non-payment. (*Mason* v. *Franklin,* 3 *Johns. Rep.* 202. *Weldon* v. *Buck,* 4 *Johns. Rep.* 144. 5 *Johns. Rep.* 375.)

*Buckley* and *Slosson,* contra. 1. We admit the general rule, that where a drawer has *no funds* whatever in the hands of the drawee, he is not entitled to notice of the dishonour of his bill. The rule was first laid down in the case of *Bickerdike* v. *Bollmar,* (1 *Term Rep.* 405.) that a want of effects would excuse a want of notice. But the *English* Judges have since expressed their regret, that the strict general rule was departed from, in that case ; and it has been frequently decided since, that where there are dealings between the parties, and there is a fluctuating balance between them, or the drawer has reason to believe that he has, at the time, or that there will be, funds in the hands of the drawee, when the bill becomes due, he is entitled to notice of the dishonour of his bill. (*Legge* v. *Thorpe,* 12 *East,* 171. 2 *Camp. N. P. Rep.* 503. 3 *Camp. N. P.* 217. 334. *Brown* v. *Maffy,* 15 *East,* 216. *Rucker* v. *Hiller,* 16 *East,* 43.) And the principle of these decisions has been fully recognised by the Supreme Court of the *United States,* in the case of *French's Executrix* v. *The Bank of Columbia,* (4 *Cranch,* 141.) Here, there had been extensive dealings between the drawers and drawees, and an open account. The drawees went on accepting and paying bills down to the 25th of *April,* 1819 ; and it was owing merely to the fall in the price of the cotton, that the effects were not sufficient to pay the bill in question. There is not, then, the least ground to excuse a want of diligence, for want of funds. But Chief Justice *Marshall,* in the case in 4 *Cranch,* puts it on the ground of *fraud* in the drawer, in drawing bills, when he knows that he has not any funds at all in the hands of the drawee. And in *Claridge* v. *Dalton,* (4 *Maule and Selw. Rep.* 226, 230.) the rule in *Bick-*

*rdike* v. *Bollmar*, is again mentioned, with regret, and confined to the case where the bill is drawn without any funds in the hands of the drawee, or any reasonable expectation, that, in the ordinary course of business, it would be accepted and paid.

2. Then, was the bill presented in a reasonable time ? The law on this subject is clearly laid down in the case of *Muilman* v. *D'Eguino*, (2 *H. Black.* 565.) Chief Justice *Eyre* says, "what is reasonable time must depend on the particular circumstances of the case; and it must always be for the jury to determine, whether any *laches* is imputable to the plaintiff." *Buller*, J. says, the only rule that he knew of, applicable to all cases, was, that due diligence must be used. And that as to *laches*, in regard to bills payable at sight, or a certain time after sight, there was a further rule, namely, that the bill ought to be put into circulation. That as to *notice*, it was clearly sufficient to send it by the ordinary mode of conveyance. These rules have been frequently recognised. If the parties live in the same place, the bill ought to be presented the same day. If the parties entitled to notice live in another place, or abroad, it ought to be sent by the next or earliest conveyance. (2 *Taunt.* 287. 2 *Camp. N. P. Rep.* 537. 16 *East*, 248. 7 *Taunt.* 159. 397. *Chitty on Bills*, 200, 201. *Bayley on Bills*, 65. *Kyd on Bills*, 117.) Admitting that one mail was lost, yet the bill ought to have been sent by the next, or put into circulation the very first opportunity. There is no evidence that the bill was negotiated in due season ; nor is the delay sufficiently accounted for.

SPENCER, Ch. J., delivered the opinion of the Court.

The questions in this case are, 1. Whether the bill was transmitted in due time ; and, 2. Whether the want of funds in the hands of the drawees, will excuse the delay in presenting the bill, or the irregularity in the notice of the non-payment of it.

I am entirely satisfied that there is no foundation for saying, the defendants are precluded from setting up *laches*, because they had no right to draw the bill. The case of *Bickerdike* v. *Bollmar*, (1 *Term Rep.* 405.) is considered

the first case deciding that notice to the drawer of the dishonour of the bill was unnecessary; and in that case the drawer had no funds, and knew he had none, in the hands of the drawee. The drawing the bill was considered a fraud, and it was held that he was not entitled to notice, and could not be injured by the want of it. It has, however, since that case, repeatedly been decided, that where there are any funds in the hands of the drawee, so that the drawer has a right to expect the bill will be paid, or where there are not any funds, yet, if the bill was drawn under such circumstances as induced the drawer to entertain a reasonable expectation that the bill would be accepted and paid, the person so drawing it, is entitled to notice; and, *a fortiori,* he is entitled to have the bill duly presented. The rule is correctly laid down in *Claridge* v. *Dalton,* (4 *Maule and Selw.* 229.) by Lord *Ellenborough.* The principle which has been stated, is very ably supported by Chief Justice *Marshall,* in *French* v. *The Bank of Columbia,* (4 *Cranch's Rep.* 153.) where the principal authorities are reviewed. There is nothing more important, than that, in questions of a general mercantile nature, there should be a uniformity of decision; and, although the justice and equity of this rule may not, in some cases, be perceived, where the payee has purchased a bill, and it is drawn in good faith, and no conceivable loss has happened by the want of notice; yet, as there may be cases where, though there were no funds in the hands of the drawee, the drawer may be injured by the want of notice, it is better that the rule on the subject should be general and uniform throughout the mercantile world.

In the case of *Miller* v. *Hackley,* (5 *Johns. Rep.* 375.) *Weldon* and *Furniss* v. *Buck* and another, (4 *Johns. Rep.* 144.) and *Mason* and *Smedes* v. *Franklin,* (3 *Johns. Rep.* 202.) it was decided, that if a bill was presented for acceptance, and the drawee refused to accept it, and notice thereof was duly given, a demand of payment, and notice of a refusal to pay, was unnecessary, because the drawer was fixed already.

2. The only remaining question, then, is, whether there was *laches* in presenting the bill for acceptance; for there is no

doubt that regular notice was given of the refusal to accept the bill, the day subsequent to the demand. I do not find, that where a bill of exchange has been drawn payable at sight, or any specified number of days after sight, that there is any definite or fixed rule when the bill shall be presented for acceptance, other than this, that due diligence must be used. And it is certain, that with respect to such bills, and particularly where they are negotiated by the payee, there is much more latitude, as to the time of presentment, than where the bill has a fixed period of payment. In the case of *Muiliman* v. *D'Eguino*, (2 *H. Bl. Rep.* 565.) which is a very leading case on this subject, the Judges felt the difficulty of saying at what time such a bill should be presented for payment. Ch. J. *Eyre* observed, that the Courts had been very cautious in fixing any time for an inland bill, payable at a certain period after sight, to be presented for acceptance. He said, that if, instead of drawing their foreign bills payable at *usances*, in the old way, merchants chose, for their own convenience, to draw them in this manner, and to make the time commence when the holder pleases, he did not see how the Courts could lay down any precise rule on the subject. But he thought the holder was bound to present the bill in a reasonable time, in order that the period might commence from which the payment was to take place; and that what was reasonable time must depend on the particular circumstances of the case. *Buller*, J., said, that he thought a rule might, thus far, be laid down as to *laches*, with regard to bills payable at sight, or a certain time after sight, namely, that they ought to be put in circulation. If they are circulated, he said, the parties are known to the world, and their credit is looked to; and if a bill, drawn at three days sight, was kept out in that way for a year, he could not say there would be *laches*: but further than that, no rule could be laid down. *Heath*, J., observed, that no rule could be laid down as to the time for presenting bills, payable at sight, or a given time after; that in the *French* ordinance of 1673, (*Postlethwaite's Dict.* tit. *Bills of Exchange*,) it is said, that a bill, payable at sight, or at will, is the same thing, and that this agreed with *Marius*.

Now, here, the bill was put in circulation by *Ross* and *Starr;* and, although it is probable, that the first of exchange was lost, by the loss of the mail, we are not authorized to consider that as a fact in the case; but, I cannot say, that upon such a bill there has been *laches*. We perceive how extremely cautious the Judges were, in the case cited, in laying down any rule. The evident inclination of their minds was, that when the payee put the bill in circulation, the subsequent holder was not bound to any strict presentment. The drawers of the bill evidently did not mean to limit the time of presentment, by making the bill payable at sixty days after sight. They meant to give a latitude, as to time, to the holder; and my conclusion is, that there is not such *laches* as will discharge the drawers.

Judgment for the plaintiff.