N. HAMLIN, Appellant, v. B. F. SIMPSON.

**Checks: PRESENTATION.** In the ordinary course of business a check received by the payee, sixteen and three-fourths miles from the bank upon which it was drawn, should be presented for payment, at the latest, the second day after its receipt.

OVERDRAFTS. Although the drawer of a check has not sufficient funds on deposit to meet it, if he has grounds for belief that it will be honored, it is the payee's duty to present it for payment; and a failure to do so will release the drawer if he is damaged thereby.

SAME. The drawer of a check had on deposit with a bank drawn on, two thousand dollars, for which he held a certificate of deposit, but had no general funds to his credit. He claims that he had an arrangement whereby he was permitted to check against such certificate, and in fact had been allowed to overdraw his general account. *Held*, that he had reasonable ground to believe that the check would be paid.

KNOWLEDGE OF INSOLVENCY. Where a check was drawn upon a bank which was insolvent, the fact that three days later the drawer deposited more than enough to meet the payment of the check is decisive evidence that he had no knowledge of the insolvency when he drew the check.

BURDEN OF PROOF. The burden of proof is upon the payee of a ckeck to show that the drawer was not injured by the former's failure to present the check for payment within a reasonable time.

STATUTE OF FRAUDS. An agreement, between the holder of a certificate of deposit and the cashier of a bank, that such holder could check against the amount of the certificate, cannot be objected to by the payee of a check so drawn, if by any one, on the ground that such agreement is within the statute of frauds.

*Appeal from Audubon District Court.*—HON. N. W. MACY, Judge.

FRIDAY, APRIL 8, 1898.

PLAINTIFF seeks to recover the sum of nine hundred and twenty-nine dollars and forty-six cents for hogs and cattle sold the defendant. The answer admits the purchase of said live stock at the price named, but avers that the price was settled for at the time by bank checks, which plaintiff held an unreasonable time before presenting for payment, and that the bank upon which they were drawn became insolvent. By way of reply, plaintiff says that, at the time defendant drew said checks and delivered them to plaintiff, he (defendant) had no funds with which to meet them in the bank upon

which they were drawn; that at said time said bank was hopelessly insolvent, and that this fact was well known to defendant, and unknown to plaintiff; and that a presentment of said checks would have been useless. The case was tried to the court without a jury. There was a judgment dismissing plaintiff's petition, and in favor of defendant for costs. Plaintiff appeals.— *Affirmed.*

*Willard & Willard* for appellant.

*Theo. F. Myers* and *F. E. Brainard* for appellee.

WATERMAN, J.—The facts, as stipulated or established, are that on December 13, 1893, the defendant gave his two checks on the Cass County Bank of Atlantic to plaintiff in settlement for live stock purchased. One of the checks was for four hundred and forty-one dollars and eighty cents; the other, for four hundred and eighty-seven dollars and sixty-six cents. The checks were given by defendant, at plaintiff's home in Audubon county, sixteen and three-fourths miles from Atlantic, and five and one-half miles from Brayton, a station on a railroad leading to Atlantic, upon which two trains a day, except Sunday, ran to the last-named town. There was a bank in Exira, a town seven miles from plaintiff's home. Plaintiff never presented the checks for payment, and on December 27, 1893, the Cass County Bank, being insolvent, was placed in the hands of a receiver.

II. As an excuse for not presenting the checks for payment, and to show that defendant suffered no injury by the failure so to do, the plaintiff alleges that defendant at the time he gave the checks had no funds in said bank against which to draw. In the ordinary course of business, the checks should have been presented for payment, at the latest, during

business hours of the second day after their receipt, which would have been the fifteenth. Tiedeman, Commercial Paper, section 443. At that time, and for some days before, defendant's general account with the bank was overdrawn. On December 16th he deposited one thousand, one hundred and fifty dollars and seven cents. During all this time defendant had on special deposit in this bank the sum of two thousand dollars, represented by two certificates of deposit for one thousand dollars each. As a general rule, it may be said that a check drawn on a bank in which the drawer has not sufficient funds to meet it need not be presented at all, in order to hold the drawer. This rule, however, has some qualifications. The reasons for it seem to be that it is deemed a fraud for one to give a check which he has no ground to believe will be paid, and that he does not need notice of the fact that the check is not paid, when he must have known that payment would be refused. But if he has reason to think his check will be honored, though he may have no credit balance on the books of the bank, his act in drawing it will not be a fraud; and he will be in a position to insist on prompt presentment, demand and notice. In *Beauregard v. Knowlton*, 156 Mass. 395 (31 N. E. Rep. 389), the rule is said to be that the drawing of a check on a bank wherein the drawer has no funds, and *with no ground for a reasonable expectation that the check will be paid,* is a fraud, and will excuse the failure to present for payment. See, also, *Savings Co. v. Weakley,* 103 Ala. 458 (15 South Rep. 854); *Case v. Morris,* 31 Pa. St. 100; *True v. Thomas,* 16 Me. 36; *Stanton v. Blossom,* 14 Mass. 116; *French v. Bank,* 4 Cranch, 141; *Robinson v. Ames,* 20 Johns. 146; *Bank v. Easley,* 44 Mo. 286; *Hill v. Norris,* 2 Stew. & P. 114. In speaking of the rule that excuses demand and notice when the drawer has no funds in the hands of the drawee, it is

said in *Case v. Morris, supra:* "It introduced an excep-
tion to a plain and intelligible rule of commercial law,
which many eminent and experienced judges have since
regretted.    It is adhered to on the principle of *stare
decisis,* but it is not to be extended a single step."

III.    Under the rule stated, we have this situation:
There being no funds to the credit of defendant's gen-
eral account in the Cass County Bank, plaintiff was pre-
sumptively under no obligation to make demand for the
money; but this presumption is rebuttable, and defend-
ant seeks to overcome it by this showing:    During all
this time he held certificates of deposit, issued by the
bank, for the sum of two thousand dollars, and he claims
to have had an arrangement with the cashier by which
he was allowed to check against this amount.

IV.    Appellant's first objection to this defense is
that any such agreement with the cashier would be
within the statute of frauds, and that oral evidence
cannot be received to establish it.    Whatever
merit there might be in this claim, if this were
an action on the agreement, it is certainly not
good under the circumstances of this case.    No more is
being claimed here for the cashier's promise than that it
gave defendant reasonable ground to believe his checks
would be paid.

V.    Next it is said that no such agreement is estab-
lished.    The defendant is the only witness to testify on
this point; and while in several of his answers he gives
conclusions instead of specific facts, yet he does in one
answer state clearly and positively that the cashier told
him that he might check against this special deposit.
The circumstances tend, we think, to corroborate him.
This bank for some time prior to December 27, 1893,
was hopelessly insolvent.    During the period of the
transactions between these parties it was making
desperate efforts, from day to day, to keep open its doors.

It needed every dollar is could obtain to enable it to continue its business, and yet during this time defendant was allowed to overdraw his general account. This circumstance seems almost conclusive. Upon no other theory than an agreement such as defendant claims would this state of affairs have been permitted.

3    We think defendant has established that he had reasonable ground to believe the checks given plaintiff would be paid on presentation. This being true, the failure to make timely demand and give proper notice will release defendant, if he has been damaged by such default.

VI.   The burden of proof is on plaintiff to show that defendant was not injured. *Kirkpatrick v. Puryear*, 93 Tenn. 409 (24 S. W. Rep. 1130). When the bank went into the reciever's hands, defendant had on deposit two thousand dollars on certificates, and six hundred and forty dollars and fifty-three cents on general account. This was the amount of his loss. But he holds some collateral security, which was given him by the bank prior to the failure. If the checks had been presented and paid, defendant's balance would have been one thousand, seven hundred and eleven dollars and seven cents, and the undisputed testimony is that the collateral is insfficient to pay this amount. It affirmatively appears, then, that defendant has been damaged by plaintiff's default.

VII.   It is also urged by plaintiff that defendant knew the bank was insolvent at the time he drew these checks. This defendant denies. But the fact that he took security for his deposits is offered as an argument in support of this allegation. We think, perhaps, the financial crisis of 1893 was a matter so affecting the interests of the whole people as that we may take judicial notice of it, and the condition of things resulting from it. About the time of this transaction, banks

were failing in almost every part of the country. Even those that were entirely solvent hoarded their cash, and parted with it only on compulsion. Every bank depositor was nervous, and with good reason. Defendant's act in taking security, which might in ordinary times have meant much, under the circumstances then existing meant but little. It evidenced scarcely anything more than the timidity that was then generally prevalent among depositors. But if, perhaps, we have no right to take cognizance of these matters, of which no evidence was offered, there is one fact in testimony that is, in our minds decisive of this point. Three days after these checks were given, defendant deposited one thousand, one hundred and fifty dollars and seven cents in this bank, and more than six hundred dollars of it remained, as we have already said, and was lost in the final wreck. Such action on defendant's part, it is not reasonable to believe, would have been taken, had he known the bank was insolvent. This covers the case as presented, and our conclusion is apparent. The judgment below will be AFFIRMED.