# CHARLESTON

Lewis, Hubbard & Co. *v.* Montgomery Supply Co.

Submitted February 13, 1906.   Decided February 20, 1906.

1. Bills and Notes—*Presentation of Checks—Diligence.*
    A person receiving a check, on a fund in the hands of a bank,
    for the amount of a demand against the drawer thereof, is bound
    to exercise reasonable diligence in making presentment thereof for
    payment, if he wishes to avoid risk of loss by insolvency of the
    drawee.   (p. 79, 80.)

2. Same—*Time for Presenting.*
    If the payee of the check and the drawee reside, or have their
    places of business, in the same city or town, presentment must be
    made before the expiration of business hours of the day next after
    the day of the receipt thereof.   (p. 81.)

3. Same—*Forwarding by Mail.*
    If the person receiving a check and the bank on which it is
    drawn are in different places, it must be forwarded, for present-
    ment, by mail or other usual mode of transmission, on the next

day after the receipt thereof at the place in which the payee resides or does business, if reasonably and conveniently practicable; and, if it is not so practicable, then by the next mail or other similar means of conveyance, leaving after said date. (p. 81,)

4. SAME.

Neither payee nor his agent is required to transmit such check by the only, or last, mail of the day next after its receipt, if such mail closes or departs at an hour so early as to render it inconvenient for the holder to avail himself of it. (p. 85.)

5. SAME.

What is an unreasonably early hour in such case, depends upon all the circumstances of the transaction and situation of the parties; and, the facts being free from controversy and doubt, is a question of law for the court. (p. 85.)

6. SAME—*Collection through Bank.*

In the absence of any agreement to the contrary, and of any circumstance, known to the payee, making it imprudent to do so, he may endorse and deliver the check to a bank for collection; but this does not extend the time within which it must be forwarded for presentment. The bank, however, in such case, is not required to forward it on the next day after its receipt by the payee, if there be no reasonably convenient means of doing so, within the banking hours of that day. (p. 85.)

7. SAME—*Judicial Cognizance of Existence of Banks.*

Though the courts of this State cannot have judicial knowledge of the existence of any particular bank, or of any mode of business peculiar to a given bank, they will take judicial notice that, in all cities and towns of large population and extensive business, within their jurisdiction, banks exist, and of the fact that their operations are governed by reasonable rules and regulations, to which parties dealing with them, or in commercial paper, are deemed to have subjected themselves. (p. 87.)

8. SAME.

Courts cannot take judicial notice of the business hours of any particular bank, but the courts of this State judicially know that ordinarily banks in the cities and larger towns of the State do not open their doors for business at an earlier hour than 9 o'clock A. M. (p. 88.)

9. BILLS AND NOTES—*Presentation of Check.*

The parties to a check drawn on a bank and sent to a distant place to be forwarded for presentation, are deemed in law to have acted with knowledge of the usual diligent method of making such presentment through a bank at the place to which it is sent, and to have agreed to suffer any reasonable delay incident to such mode of presentment. (p. 88.)

10. Same—*Liability of Drawer of Check.*

In such case, the drawer, by allowing his funds to remain in the drawee bank, and the payee, by accepting the check, evince belief in the solvency of the bank, and the former voluntarily takes the risk of its solvency during the reasonable period necessary for presentment of the check in the usual manner.   (p. 88.)

11. Same.

The drawer, in delivering a check to an agent of the payee, having no authority to endorse it, at the place of business of the drawer, impliedly agrees to allow such additional time for presentment as may be necessary for the transmission of the check to the principal of the agent.   (p. 88.)

12. Same.

Failure to present a check does not bar recovery from the drawer, if the time intervening between delivery thereof and the failure of the bank, is not sufficient for presentment by the exercise of such diligence as the law requires.   (p. 88.)

13. Appeal—*Reversible Error—Instructions—Evidence.*

It is reversible error to give an instruction, presenting an hypothesis which has no foundation in the evidence adduced, unless the court can clearly see that it did not prejudice the exceptor. (p. 90.)

14. Trial—*Offer of Evidence—Rejection.*

An offer of evidence, not appearing in any way to be relevant and material, is properly rejected.   (p. 90.)

Error to Circuit Court, Fayette County.

Action by Lewis, Hubbard & Co. against the Montgomery Supply Company.    Judgment for defendant, and plaintiffs bring error.

*Reversed.*

Berkeley Minor, Jr. and Payne & Hamilton, for plaintiffs in error.

Dillon & Nuckolls, for defendant in error.

Poffenbarger, Judge:

A question of commercial law arises on this record.  Lewis, Hubbard & Co., of the city of Charleston, doing a wholesale business in groceries, had, prior to the 24th day of September, 1900, sold goods to the Montgomery Supply Co., doing a retail grocery business in the town of Montgomery, and, on that day, there was due from said last mentioned concern the sum of $183.69.   On that day W. G. Hubbard, a traveling

salesman for Lewis, Hubbard & Co., was at Montgomery, called upon the Montgomery Supply Co., received from it, not earlier than four o'clock P. M. of that day, a check for the amount of the bill, payable to Lewis, Hubbard & Co., drawn on the Montgomery Banking & Trust Co., a bank in Montgomery, neglected or failed to forward the same to his principal, and went on from Montgomery to call upon other customers of his house, taking the check with him. He received the check on Monday, the 24th day of September, and, on Friday, September 28th, the Montgomery Banking & Trust Co. failed to open its doors for business, went into the hands of a receiver and finally paid a small percentage to its depositors. The drawer of the check had ample funds in the bank to pay it, and it presumably would have been paid, had it been presented for payment, at any time during banking hours on Thursday the 27th. It was afterwards sent to the bank through proper channels and protested.

This action was brought by Lewis, Hubbard & Co. against the drawer of the check, in a justice's court, and went from that court to the circuit court of Fayette county, where judgment was rendered in favor of the plaintiff for the sum of $26.60, the amount received by the defendant as a dividend on its deposits from the assets of the defunct bank. This judgment being substantially one for the defendant, the plaintiff has brought the case to this Court on a writ of error.

From the testimony in the case, it appears that Hubbard had authority to collect and to give receipts for his collections, but did not have authority to endorse checks in the name of his principal and receive money thereon. It further appears that, had he promptly mailed the check to his principal, it would have been received by it the following day, and, if discounted at Charleston on the same day and promptly forwarded back to Montgomery within business hours of that day, it would have reached the latter place not earlier than Wednesday morning. The mails left Montgomery for Charleston three times a day, namely about noon, between three o'clock and five o'clock P. M. and between seven o'clock and eight o'clock P. M. The first two reached Charleston in about one hour's time. But the last one, de-

livery was made in Charleston the next day. The east bound train took western mail at Montgomery, carried it east and delivered it to a west bound train which passed Charleston at about three A. M. the next morning. The mails from Charleston reached Montgomery twice a day, one at about six A. M. and the other between ten and eleven A. M. It was by the latter one that mail could be posted at Charleston and be received at Montgomery on the same day. If, therefore, the plaintiff was bound by law to exercise the utmost diligence possible under the circumstances to obtain the money on the check, and is precluded from recovery by its failure to exercise such diligence, its case would clearly fail; for it could have had the check presented for payment at Montgomery on Thursday. But, if the law does not demand of the holder of a check the utmost diligence and haste in procuring payment of it by the drawee, the question depends upon the degree of diligence that is required. If such diligence did not require the discounting or depositing of the check at Charleston on the day of its reception at that place by the plaintiff, and it was allowable to deposit at a Charleston bank on the next day, namely, Wednesday, it could not have reached Montgomery until Thursday, unless deposited and forwarded early in the morning, for the last mail from Charleston to Montgomery left on that day not later than ten o'clock A. M., for it arrived at Montgomery between ten and eleven o'clock A. M. The mail for that train would probably close by 9:30 o'clock A. M. If the plaintiff was bound to put the check in the hands of the bank in time for that mail on Wednesday, it was necessary, therefore, to do so on Tuesday or at an early hour on Wednesday. If the plaintiff was bound to deposit it on the same day of its reception and the Charleston bank was not required to forward it until the next day, it would not have reached Montgomery until Thursday, unless mailed at an early hour on Wednesday. If so, and the Charleston bank had the whole of the business day in which to mail it, it would not have reached Montgomery until Thursday. If it had been received at Montgomery by the agent or correspondent of the Charleston bank on Thursday, then the question arises, whether the agent or correspondent was bound to present it on the day of its reception or was entitled to hold it until the next day,

Friday.   Upon the answers to these questions, to be found in the principles declared by the courts, the correctness of some of the positions taken by the attorneys in the case, depends.

In some respects, the rights of the parties to a check, drawn by an individual on a bank, are governed by the principles applicable to the parties to an inland bill of exchange; but not in all respects.   Notice of dishonor and non-payment of a check, and diligence in the presentation thereof are required, only when it is necessary to protect the drawer from loss by reason of the failure of the drawee, holding funds of the drawer sufficient to pay the check.   Presumably the check is drawn upon funds in the hands of the drawee belonging to the drawer, and amounts to an appropriation thereof in favor of the payee on the check, and he owes to the drawer the duty of exercising a certain amount of diligence to obtain payment in order to prevent a loss to the drawer by reason of failure of the bank.   In other words, if he fails to perform such duty, the loss falls upon himself and he is barred by law of any right to recover against the maker of the check.   If, by delay in presentation, a loss occurs, the payee or holder is deemed to have extended credit to the bank, and must suffer the consequences.   *Cox* v. *Boone*, 8 W. Va. 500; *Compton* v. *Gilman*, 19 W. Va. 312; *Pursell* v. *Allemong & Son*, 22 Grat. 739; 5 Am. & Eng. Ency. Law 1030; Parsons on Notes and Bills, Vol. II pp. 58, 59; *Bank* v. *Bank*, 10 Wall. 380.

For the reasons above stated, presentation of the check for payment, at the bank on which it is drawn, must be made within a reasonable time, and what is a reasonable time depends upon the situation of the parties with reference to one another and with reference to the bank, and all other material facts and circumstances entering into the transaction.   When the drawee and payee are in the same town or city, presentation must be made not later than the next day after the reception of the check, unless there is some understanding or agreement to the contrary or some circumstance intervenes or is connected with the transaction sufficient to vary the rule; but it is sufficient to present it at any time on the next day within business hours.   *Alexander* v. *Birchfield*, 1 Car. & Marsh. 75, (41 E. C. L. 47.)   In that case, Tindal, C. J.,

said: "The only way in which I can state the rule to you is this, that, if a party receive a check on a particular day, he may present it at any time during banking hours on the following day to that on which he received it." See also to the same effect *Moule* v. *Brown*, 4 Bing. N. C. 266, (33 E. C. L. 347); *Cox* v. *Boone*, 8 W. Va. 500; *Simpson* v. *Ins. Co.*, 44 Cal. 139; *Cawein* v. *Brewinski*, 6 Bush. (Ky.) 457; *Schoolfield* v. *Moon*, 9 Heisk. (Tenn.) 171, *Boddington* v. *Schlencker*, 4 Barn. & A. 752; *Holmes* v. *Roe*, 62 Mich. 199; *Lloyd* v. *Osborne*, 92. Wis. 93; 5 Am. & Eng. Ency. Law 1042. But when the person receiving the check is at a place different from that of the place of business of the drawee, additional time is allowed. The person receiving it need not forward it for presentment on the day of its reception, but may do so on the next day thereafter, and the person to whom it is forwarded for presentation need not present it on the day of reception, but may do so on the next day after he receives it. In this case two extra days are allowed, while in the other but one is allowed. 5 Am. & Eng. Ency. Law 1042; *Moule* v. *Brown*, 4 Bing. N. C. 266; *Holmes* v. *Roe*, 62 Mich. 199; *Prideaux* v. *Criddle*, L. R. 4 Q. B. 455. *Griffin* v. *Kemp*, 46 Ind. 172, 176; *Burkhalter* v. *Bank*, 42 N. Y. 538; Parsons on Notes and Bills, 72. The reason for this indulgence is well stated by Story on Bills, section 290, in discussing the law of notice of dishonor and protest, in which the principle is generally held to be the same. He says: "In the first place then it is not by our law necessary in any case to give notice, either by post or otherwise, on the very day on which the dishonor and protest took place, although the holder is at liberty to do so at his option. He is always allowed, by law, a whole day for this purpose, and is not compellable to lay aside all other business to devote himself to that particular purpose. For it would be most inconvenient and unreasonable to require such strictness, as it might interfere with other business and duties quite as pressing and important; and therefore it is sufficient, if he sends notice by the post or otherwise by the next day." The same reason which suffices to give two days, one for reception and the other for presentation, when the payee and drawee are at the same place, justifies the general rule, allowing four days when they are at different places.

In view of these principles, the way to a conclusion would

seem to be perfectly clear but for the circumstance of there being no mail from Charleston to Montgomery on the afternoon of Wednesday, the last day allowed by the rule for forwarding the check to Montgomery. Did this circumstance make it necessary to forward the check in the mail leaving Charleston at about nine or ten o'clock A. M.? If not, and it was allowable to deposit it in the postoffice within business hours on Wednesday, it could not have reached Montgomery until Thursday. Enough has been stated to clearly demonstrate that the utmost diligence possible is not required. The payee is bound to exercise only reasonable diligence and need not do that which is contrary to, or variant from, the ordinary and prudent mode of transacting business. But the law does seem to require such action, within reasonable limitations, determined by considerations of convenience, but not of leisure, as is calculated, in view of the possibilities of loss, by delay, to prevent it. Hence, the two-day rule, allowed for forwarding notices or paper for presentment, is subject to this qualification, namely, that it must be sent by the mail of the second day. If there be more than one mail on that day, it need not go by the first; but, if there be but one, it must go by it, unless it leave or closes at an unreasonably early hour. The whole of the second day is not allowed, unless the last mail of that day goes at the close of business. To this point, the American authorities seem to be unanimous.

They are ably reviewed, and the result clearly stated, by Chief Justice Green in *Burgess* v. *Vreeland*, 4 Zabr., 24 N. J. L. 71. In that case, the controversy related to presentment, non-payment and protest of a note and notice thereof, but the principles governing that subject are applicable to checks, when loss occurs by failure to promptly present them. "In the more recent edition of Kent's Commentaries, the rule is stated thus: 'According to the modern doctrine, the notice must be given by the first direct and regular conveyance. * * * This means the first *mail that goes after the next to the third day of grace;* so that if the third day of grace be on Thursday, and the drawer or endorser resides out of town, the notice may, indeed, be sent on Thursday, but must be put into the post office or mailed on *Friday, so as to be forwarded as soon as possible thereafter.* 3 Kent's Com.

(6th ed.) 105, 106. And in note *a* to page 106, the author further states, that the rule was laid down too strictly in *Lenox* v. *Roberts*, 2 Wheat 373; *viz*, that notice of dishonor must be put into the post office early enough to be sent by the mail of the day succeeding the last day of grace; and that the rule, as it is now generally and best understood in England and in the commercial part of the United States, is, that notice put into the post office on the next day after the third day of grace, *at any time of the day* so as to be ready for the first mail that goes *thereafter*, is due notice, though it may not be mailed in season to go by the mail of *the day after the default.* This is certainly very high authority on a question of commercial law, and the change in the statement of the principle shows that it was made deliberately and upon examination and reflection. Yet it is worthy of notice that this authority was before this Court at the time of the decision in the *Sussex Bank* v. *Baldwin.* It has since undergone the examination of other American courts without securing their concurrence of approbation. *Donnes* v. *The Planters Bank*, 1 Smedes & Marshall 261; *Wemple* v. *Dangerfield*, 2 *Ib.* 445. In both these cases the rule was held to be, that the notice must be in the post office in time to go by the mail of the day next after the day of protest, if a mail goes on that day, unless it leaves at an unreasonably early hour. In *Beckwith* v. *Smith*, 22 Maine 155, it was held that the notice must be in the post office in season to be carried by the mail of the next day after the note is dishonored. In *Chick* v. *Pillsbury*, 24 Maine, 458, it was held by a majority of the court, that it is sufficient if notice of the dishonor of a promissory note to be put into the mail within a convenient time after the commencement of business on the day succeeding that of the dishonor. In that case the note was protested in the city of New York on the 29th of November, and on the same day notice was given to the agent of the plaintiff; on the next day notice of dishonor, directed to the defendant, at his residence in Bangor, Maine, was put into the post office in the city of New York, between twelve o'clock at noon and eight o'clock at night. So far the facts correspond precisely with the facts of the present case. But it was further proved in the case that there was but one daily mail from the city of New York by which letters would go

to Bangor; that this mail closed at six, and left the city at seven in the morning, which in the month of November . would be soon after daylight. The counsel of the defendant insisted that the notice was not mailed in season; that it must be put into the postoffice in season to go by the mail of the next day after dishonor, however early it might depart. And of this opinion was Shepley, J., who, in elaborate opinion after an able review of the cases, held that the strictest rule, requiring in all cases that the notice should be mailed in season for the mail of the day next after the dishonor of the note, was sustained by the weight of the authority. And it is remarkable that Justice Kent, notwithstanding the opinion previously expressed, that the party had the whole of the day following the third day of grace in which to mail notice of protest, concludes the note to which allusion has been made by saying, that he apprehends that the weight of authority is in favor of the view of the rule as taken by Mr. Justice Shepley. But the majority of the court in *Chick* v. *Pillsbury* held that the rule does not require that the notice should be mailed in season to go by the mail of the next day, however early it might close, but that it extends to the allowance of a convenient time after the commencement of business hours on the next day to prepare and dispatch the notice; and inasmuch as the notice was mailed in season to go by the next mail, which left on the day succeeding that of the dishonor after business hours had commenced, the notice in that case was adjudged sufficient. The principle is precisely in accordance with the ruling of this court in the case of *The Sussex Bank* v. *Baldwin*. There is, it is believed, no well considered adjudication that carries the doctrine further." *Burgess* v. *Vreeland*, 4 Zabr. 71, 77-80.

Morse on Banking, in treating of the law of diligence in respect to the presentment of checks, says in substance, at section 421, the same rules and principles are alike applicable to them and the giving of notice of protest. In the absence of agreement or special circumstances, the time allowed is as it has been hereinbefore stated. In sub-section (c) 2 of said section 421, he says: "The drawer cannot (except by agreement or under special circumstances as above) be held absolutely beyond the business hours of the day following his delivery of the check, if the bank is in the same

place, or if the bank is in another place, the period of his liability will be until the close of business hours on the first secular day following the receipt of the check by some one in the bank's locus, the check *having been mailed upon the day following its delivery by the drawer*." At section 423 he states the qualification of the rule, under the special circumstances of the departure of the mail at an unreasonably early hour, citing *Cox* v. *Boone,* 8 W. Va. 500, in which the failure of the holder to send the check by the only mail of the day on which ordinarily it should have been sent, was excused, because it departed at 7:30 o'clock A. M. in the month of February. Had it departed at a reasonable hour, the decision would have been different. It would have been his duty to forward it on the next day after its reception.

The reason for requiring the check or notice to be forwarded on the second day, if it be practicable to do so, is apparent; for otherwise the effect would be to give the party three days instead of two and without any substantial reason therefor. The holder of a check cannot extend the time allowed him by depositing it in a bank for collection. *Alexander* v. *Birchfield,* 1 Cat. & Marsh. 75. It must be forwarded or presented on the next day after receipt, if reasonably practicable, whether it be done in person or by agent.

What is an unreasonable hour depends upon circumstances. If the court could say, as matter of law, that nine o'clock or half past nine o'clock A. M. is an unreasonable hour, within the meaning of this law, then we could say it would have been sufficient to have forwarded it in the mail of Thursday by depositing it in the post office at some time on Wednesday. No evidence was introduced showing the business hours of the banks in Charleston, nor the situation, with reference to the post office, of the bank with which the plaintiff transacted its business. Therefore, the question submitted to the jury was whether the time of departure of the mail, shown by the evidence, was, under ordinary circumstances, unaffected by any local custom or mode of business, an unseasonable hour. It did not involve any inquiry as to whether, under a given state of facts, a thing could reasonably be done or accomplished. It seems, there-

fore, to have presented very little matter of fact, if any at all, for the consideration of the jury, and to have been substantially a question of law. It has been frequently held that when the only question is the reasonableness of the time, the facts being undisputed, it is one of law for the court. It is rather a question of commercial law than one of mere fact, the exigencies of commercial transactions, and all the peculiarities of that kind of business, having established certain rules and regulations by which both court and jury are bound. *Taylor* v. *Sip*, 30 N. J. L. 384. *Rosenthal* v. *Erlicker*, 154 Pa. St. 399, holds that "When the only question is that of diligence and the facts are uncontroverted, it is one of law for the court." See also *Cawein* v. *Browinski*, 6 Bush. (Ky.) 457; *Walker* v. *Stetson*, 14 O. St. 89; *Linville* v. *Welch*, 29 Mo. 203. In *Downs* v. *Bank*, 1 S. & M. (Miss.) 261, 277, it is said the question is not what inference the jury might draw, but what testimony does the law require in the case? In *Prescott Bank* v. *Caverly*, 7 Gray (Mass.) 217, Bigelow, J., said: "Ordinarily, the question whether a presentment was within a reasonable time, is a mixed question of law and fact, to be decided by the jury, under proper instructions from the court. And it may vary very much, according to the particular circumstance of each case. If the facts are doubtful or in dispute, it is the clear duty of the court to submit them to the jury. But when they are clear and uncontradicted, then it is competent for the court to determine whether the time required by law for the presentment has been exceeded or not." Parsons on Notes & Bills, p. 340, says: "Where the facts are few and simple, and the acts or admissions of parties clear and unequivocal, the question is one of law for the court. But where the rights and liabilities of parties depend on contracts, and a variety of transactions and dealings arising therefrom, or where the facts are contradictory and complicated, it is a question for the jury to determine."

In the exercise of the power to determine what is a reasonable time, or whether an act is done within a reasonable time, according to the law merchant, the courts have always taken judicial notice of some of those customs, habits and practices which may be deemed to be a part of the knowledge and information of the people generally, and also of customs

and practices peculiar to banks and other financial and commercial institutions. They have determined repeatedly what is a reasonable hour for presentation of a bill for acceptance at the place of business of a trader, as well as for the presentation of a note or other negotiable instrument at a bank, marking a distinction between the two classes of institutions, due to the known difference in their hours of business. What is a sufficient presentation in point of time at the place of business of a merchant might not be sufficient in the case of a bank. Numerous illustrations of this will be found in the reported cases. In making such distinctions the courts necessarily take judicial notice of the difference in methods of transacting business. In some instances, they have expressly declared their power to take judicial notice of such matters. Thus, in *Davis & Co.* v. *Hanley*, 12 Ark. 645, it is said: "This court will take judicial notice of the general custom and usages of merchants,' as well as of the 'general custom of our own country,' as matters that are generally known." Wigmore on Ev. at section 2580, says: "Courts are found noticing, from time to time, a varied array of unquestionable facts, ranging throughout the data of commerce, industry, history, and natural science. It is unprofitable, as well as impracticable, to seek to connect them by generalities and distinctions, for the notoriousness of a truth varies much with differences of period and of place." In the note to this section the author cites a vast number of instances, illustrating the proposition. As indicated by his language, the basis of judicial notice is the common notoriety of the thing which the courts judicially observe. While a court cannot take judicial notice of the existence of a bank in any particular place nor of the peculiar methods of business adopted by any bank, they must presume that every bank operates under some reasonable rules and regulations in the transaction of their business; and that parties in dealing with them or making themselves parties to commercial paper, contemplated the delay, incident to, as well as the promptness, designed to be effectuated by, such rules and regulations. They do not expect a bank, handling a large number of important securities or commercial instruments each business day, to give to one any particular or special attention, not ordinarily given to others of the same class. It is no-

torious that, for business purposes, banks open their doors later, and close them earlier, than other institutions, and that, as a rule, in cities and towns of considerable size, they are never open earlier than nine o'clock A. M. Charleston is a city of considerable proportions, in which there must necessarily be a number of banks, doing business after the manner and customs adopted by banks generally throughout the country. Hence, it requires no · strain of judicial cognizance to say that they are not open for business before nine o'clock A. M. As the evidence discloses that the last mail, leaving Charleston for Montgomery, must have gone very soon after the banks opened in September, 1900, the forwarding of the check by that mail would have required more than ordinary diligence. A bank is entitled to a reasonable time after the commencement of business in which to perform any given duty. It cannot be expected to lay aside all other matters and give its attention to that one. "Banks would be kept in continual fever if they were obliged to send out a check the moment it was paid in." Lord Ellenborough, in *Rickford* v. *Ridge*, 2 Campb. 537. It is not a question of what it is posible for banks to do, but one of what they do, and of what the parties to the paper know to be· the custom and practice of banks. Since the mail must have left Charleston between nine and ten o'clock A. M., it must have been closed at the post office very soon after the banks opened; for some time is required for the preparation of it and for carrying it from the post office to the railway station. It is highly probable that this mail closed just about the time the banks opened, and it is reasonably certain that it was closed within a few minutes after the opening of the banks. All this, the drawee of the check must be deemed to have contemplated. He was bound to know that the usual method of collecting checks is to endorse them to the banks to be forwarded by mail for presentment. Both parties, in view of their knowledge of this method of transacting such business, are deemed to have agreed to be bound by the delays incident to this mode of demanding payment. It may be said that both comtemplated the possible insolvency of the bank on which the check was drawn, or were bound to know that such a thing might happen; but the drawer, by allowing his money to remain in

that bank, and the payee, by accepting the check upon it, each evinced belief in its solvency, and the former a willingness to take the risk thereof, during the reasonable period of time, necessary for the presentation of the check, in due course of business, by the means which both parties knew the banks generally employ for that purpose.

As long ago as 1853, the supreme court of New Jersey, in *Burgess* v. *Vreeland*, 4 Zabr. 71, expressed the opinion that a mail closing at half past nine in the morning would be before usual business hours. If since that time there has been any change in this respect, it cannot be deemed to have been to the contrary of, or in conflict with, this proposition. The tendency is to limit, rather than extend, the business day in all branches of industry and commerce. A bank is not required to take advantage of a mail which closes before, or at the time of, the opening of business. In *Chick* v. *Pillsbury*, 24 Me. 458, it was expressly decided that a convenient time after the commencement of business hours of the day is allowed for the mailing of a notice of dishonor. In *Haskell* v. *Boardman*, 8 Allen (Mass.) 38, it was held that the mailing of a notice of protest at ten o'clock A. M. was not due diligence, it appearing that the only mail for that day departed at ten o'clock. It was sent by an individual to a prior endorser for the purpose of binding him. The rule in such case would be different, for the reason that there is no presumption that an individual engaged in business other than banking does not commence business at an early hour. On the contrary, it is a matter of common knowledge that merchants and traders open their places of business at an earlier hour than banks. Moreover, in this instance, the evidence shows the mail must have closed long before ten o'clock. "What is a reasonable time must depend upon circumstances and in many cases upon the time, the mode, and the place of receiving the bills, and upon the relations of the parties between whom the question arises." Dan. Neg. Inst. section 605.

That the check in this case was not actually put in course of presentment can make no difference. It is enough to make the drawer liable, that, if it had been, the time allowed

by the rule of diligence, was not sufficient. *Cox* v. *Boone*, 8 W. Va. 500.

In view of these principles the court clearly erred in giving the following instruction: "The Court instructs the Jury that if they believe the plaintiff could by due diligence have presented the check in question to the bank upon which it was drawn before it failed, it was the duty of plaintiff to do so, and if the Jury further believe the plaintiff failed to use due diligence in such respect, and its lack of diligence caused the loss of the amount of the check to the defendant, the defendant is not liable to the plaintiff for the amount of the check, but may find for the plaintiff for the sum of $22.60, Int. from Nov. 15, 1901." There was no evidence of lack of diligence. On the contrary, the evidence showed that, by the exercise of due diligence, the loss would not have been averted.

An assignment of error is predicated on the action of the court in giving the following instruction: "The Court instructs the Jury that if they believe from the evidence that W. G. Hubbard was the collector of the plaintiff and had authority to collect, agent and as such agent and collector accepted the check of the defendant, that his act in so accepting the said check was the act of the plaintiffs." This, however, is a proper instruction. It was the duty of the agent to forward the check to his principal, that delivery to him was delivery to the principal, but it must have been contemplated that he would promptly forward it, and that the time allowed for presentment would be correspondingly extended. *Rosenthal* v. *Erlicker*, 154 Pa. St. 396; *Bank of Grafton* v. *Buchannon Bank*, 80 Md. 475; *Bulkwill* v. *Bridgeport &c. Co.*, 62 Ill. App. 663; *Gifford* v. *Hardell*. 88 Wis. 538.

The rejection of the following offer of evidence is also complained of: "Here plaintiff offered to prove by witness (W. G. Hubbard) that he stated to S. B. Morgan (manager of defendant) and that Morgan knew his regular course to be leaving Montgomery on Monday and go up on the C. & O. railroad and back on Friday evening on the same week to Charleston." In this, no error was committed; for the materiality of the proposed evidence was not shown. If Morgan knew of this practice, it does not follow, that he

knew the agent habitually carried checks with him over this route, delivering them to his principal on Friday. *Jackson v. Hough*, 38 W. Va. 236.

It is hardly necessary to say that, if a different state of evidence should appear on the new trial to be allowed, the rulings of the court will have to be varied so as to conform thereto. The law here declared is applicable only to the evidence in the trial which resulted in the judgment now under review.

For the reasons stated, the judgment will be reversed, the verdict set aside, a new trial allowed and the case remanded.

*Reversed.*