María Ryan Torres, Plaintiff and Appellant, *v.* Heirs of Agustín Ryan Torres, etc., Defendants and Appellees.

No. 7105. Argued February 9, 1937.—Decided February 26, 1937

*Angel A. Vázquez* for appellant.   *F. Fernández Cuyar* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

This is an action of debt. The essential facts may be summarized thus:

María Ryan Torres, the plaintiff, sold to her brother, Agustín Ryan Torres, certain hereditary rights and interests. As a part of the agreed purchase price the purchaser delivered to the plaintiff a promissory note for $1,500. Agustín Ryan Torres died on July 14, 1932, without having paid the promissory note, but he acknowledged in his will the existence of the debt in favor of the plaintiff. The heirs of the decedent are his widow and his son, who are the defendants in this action.

The defendant Josefina de Ryan, in order to pay the amount of the promissory note executed by her deceased husband, delivered to the plaintiff, in the town of Canóvanas, a check drawn on the Banco Territorial y Agrícola de Puerto Rico, which textually reads as follows:

"Carolina, P. R., August 30, 1932.
"Banco Territorial y Agrícola de Puerto Rico.

"San Juan, P. R.—Pay to the order of Josefina G. de Ryan, $1,500_____00/no ONE THOUSAND FIVE HUNDRED 00/no DOLLARS to be charged to (Sgd.) Bernardo García—Depositary of Funds of the Insular Government—No. 243--(on the margin) Bernardo García— Carolina, P. R.

"(On the back) Pay to the order of Mrs. María Ryan in payment of a promissory note subscribed by Mr. Agustín Ryan for an equal amount.—Carolina, August 30, 1932.—(Sgd.) Josefina G. de Ryan—(Sgd.) María Ryan."

The plaintiff alleged that the check was delivered to her on September 8, 1932, and that she presented it for payment on the 24th and 26th of the same month, but that it was not paid, as the drawer did not have sufficient funds on deposit with the drawee bank, of which fact she notified the defendants at once; that the plaintiff had accepted said check on condition that the drawer, Bernardino García, would deposit funds sufficient to pay the check at any time it were presented for payment, even though this presentment were made after a reasonable time had elapsed; that the defendants had agreed that, since the check had been delivered to the plaintiff nine days after its execution, and since she lived in the town of Canóvanas, the plaintiff could present it for payment at any time, even though the time elapsed were excessive.

The defendants set up by way of defense that the delivery and indorsement of the check were unconditionally accepted by the plaintiff, in full payment of the debt; they denied that the plaintiff had presented the check for payment on September 24 or 26, 1932, or on any other date, and further denied that the check was not paid because the drawer did not have sufficient funds deposited with the drawee bank. As special defenses the defendants alleged that the complaint did not state facts sufficient to constitute a cause of action; that the check was indorsed in Carolina and delivered to the plaintiff in Canóvanas, and that both the indorsement and the delivery were effected on August 30, 1932; that the plaintiff was guilty of inexcusable delay or laches in the presentment of said check for payment, the same not having been presented within a reasonable time, for which reason the check was impaired and the effects of payment were produced; that from August 30 to September 21, 1932, the drawer of the check always had with the drawee bank funds in excess

of the amount of the check, and that had the holder presented it for payment within a reasonable time, the bank would have paid it in full out of the balance in the checking account of the drawer; and lastly, that from August 30, 1932, to September 29 of the same year, on which latter date the drawee bank closed its doors because it became insolvent, the drawer always had to his credit a balance in excess of $1,500, and that therefore, had the check been presented for payment within a reasonable time it would have been paid in full. The lower court rendered judgment for the defendants, and the plaintiff appealed to this court. She urges that the trial court in deciding the case erred as follows:

"1. In disregarding the admissions of the defendants and in weighing the evidence.

"2. In allowing the defendants to establish at the trial, over the objection of the plaintiff, a defense of which the plaintiff had no notice.

"3. In taking as one of the grounds for rendering judgment in favor of the defendants the unverified fact that the original complaint did not allege the conditions under which the plaintiff accepted the check indorsed in her favor.

"4. That the judgment is contrary to law because it has dismissed the complaint in spite of the fact that the defendants have not been relieved from their liability as indorsers of the uncertified check, and that they owe and have not paid to the plaintiff the amount she claims from them."

■■ An examination of the evidence introduced shows that the only issues set up were, first, whether the check was delivered to the plaintiff on August 30 or on September 8, 1932; second, whether the indorsement and delivery of the check were made under the circumstances alleged in the complaint; and, third, whether the check was or was not presented for payment on September 24 and 26, 1932. In the exercise of its discretionary powers the trial court held that the check was delivered to the plaintiff on August 30, 1932; that there was no agreement concerning the indorsement and delivery of the check; and that the check was not presented

for payment on September 24 or 26, 1932. The appellant, in her argument under her first assignment of error, maintains that the court in making those holdings ignored the negatives pregnant contained in the answer, the verification of which was besides defective, or what amounts to the same thing, was nonexistent, and erroneously weighed the evidence.

The question relating to negatives pregnant and that relating to defects in the oath to the answer, were not raised in the lower court. They were raised for the first time before this court, on appeal. If those defects really existed, the appellant had an ample opportunity to point them out in the lower court. By failing to do so she admitted that the facts alleged in the complaint had been duly denied or controverted by the answer. She can not now complain, for the first time, that the lower court disregarded that which she admitted as valid. It was the duty of the appellant to timely call the attention of the trial judge to the matter. She had no right to expect that the judge, in deciding the case, would take into account formal defects, if any, contained in the answer, which defects could be presumed to have been waived by the appellant. See *Berríos* v. *Garáu,* 46 P.R.R. 773; *Ana María Sugar Co.* v. *Castro et al.,* 28 P.R.R. 225, and 21 R.C.L. 560, section 119, in regard to negatives pregnant. As to the proper time for raising questions concerning defects in the verification, see *Ortiz* v. *Silva et al.,* 28 P.R.R. 357; 1 Bancroft, Code Pleading, 1008, and 65 A.L.R. 972.

We have carefully read in detail the transcript of the evidence and we are of the opinion that the trial court has correctly weighed the evidence. This assignment of error must be overruled.

For the sake of convenience, we shall consider the other assignments in a different order from that in which the appellant discusses them. Let us examine the one she assigns in the fourth and last place.

The provisions of substantive law by which we must be guided in the determination of this question are sections 72,

187, and 193 of the Uniform Negotiable Instruments Act (No. 17 of 1930, Session Laws, p. 172), and section 1124 of the Civil Code (1930 ed.). Said sections textually read as follows:

"Sec. 72.—Where the instrument is not payable on demand, presentment must be made on the day it falls due. Where it is payable on demand, presentment must be made within a reasonable time after its issue, except that in the case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof.

"Sec. 187.—A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.

"Sec. 193.—In determining what is a 'reasonable time' or an 'unreasonable time', regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case.

"Section 1124.—*          *          *          *          *          *

"The delivery of promissory notes to order or drafts or other commercial paper shall only produce the effects of payment when collected or when, by the fault of the creditor, their value has been affected."

In accordance with the facts held by the lower court to have been proven, the check was delivered to the appellant on August 30, 1932, and was not presented for payment before September 29, 1932, on which latter date the drawee bank closed its doors by reason of insolvency.

In explaining the delay in the presentation of the check for payment Eduardo Rodríguez, husband of the plaintiff, testified that one or two days after the delivery of the check to his wife the latter became ill, and she continued in this condition for twelve or thirteen days more, although no physician attended her, as she was not seriously ill. That during the period from August 30 to September 24, he came to San Juan several times but he never brought the check with him either to collect it or to certify it, because his wife wanted to come personally "to withdraw only a part of it

and open an account in her name," although he admits that he could have done all this; that those were the wishes of his wife and he wanted to please her. That on the 24th he came with her, but that the check was not paid because the drawer had no funds; that they returned to Canóvanas where they lived, and that two days later, on the 26th, he came alone to San Juan to collect the check; that his wife did not come that day "because if there were no funds on the 24th, most likely there would be none on the 26th."

Hence, thirty days elapsed between one date and the other, and we are of opinion that this was not a reasonable time. Nor would a period of sixteen days be reasonable, if we were to concede, as the appellant maintains, that the check was not delivered to her on August 30, 1932, but on September 8 of the same year, and that it was presented for collection on September 24, 1932. The authorities that we cite below construe what is a reasonable time:

"If, however, the person who receives the check and the bank on which it is drawn are in different places, the check must, in the absence of unusual circumstances, be forwarded for presentment on the day after it is received at the latest." 8 C. J. 542, sec. 754.

"In the ordinary course of business, a check received by the payee 16¾ miles from the bank upon which it was drawn should be presented for payment, at the latest, the second day after its receipt." *Hamlin* v. *Simpson*, 105 Iowa 125, 74 N.W. 906, 44 L.R.A. 397.

"If the person receiving a check and the bank on which it is drawn are in different places, it must be forwarded, for presentment, by mail or other usual mode of transmission, on the next day after the receipt thereof at the place in which the payee resides or does business, if reasonably and conveniently practicable; and, if it is not so practicable, then by the next mail, or other similar means of conveyance, leaving after said date." *Lewis, Hubbard & Co.* v. *Montgomery Supply Co.*, 52 S.E. 1017; 4 L.R.A. (N.S.) 132.

"That the plaintiff failed to present this check at the bank upon which it was drawn within a reasonable time admits of no doubts under our holdings. The check was dated the 30th day of November, which was Saturday. Had the bank upon which the check was

drawn been located at the place of plaintiff's residence, it would have been his duty to present it at the latest on the next business day after its date, which would have been Monday, the 2d of December. The bank upon which it was drawn was not at the place of plaintiff's residence, but at the town of Ravenswood, about 16 or 17 miles distant. What then, was the plaintiff's duty? He would be required to forward the check to the place of payment for presentation, by mail or some other usual mode of transmission, on the next day after the receipt thereof by him, if this could reasonably and conveniently be done, and then to have the same presented for payment not later than the day following its arrival at the place of payment. This is the doctrine laid down by this court in the cases of *Lewis, Hubbard & Co.* v. *Montgomery Supply Co.*, 59 W. Va. 75, 52 S.E. 1017, 4 L.R.A. (N.S.) 132; and *Pinkney* v. *Kanawha Valley Bank*, 68 W. Va. 254, 69 S.E. 1012, 32 L.R.A. (N.S.) 987, Ann. Cas. 1912B 115.

"Applying these rules to the facts as stated by the plaintiff, we find that there was a daily mail running from plaintiff's place of residence to Ravenswood, the place of payment of the check, leaving plaintiff's place of residence between 1 and 2 o'clock in the afternoon, and arriving at Ravenswood about an hour later. This being so, it was his duty to forward this check to Ravenswood for presentation to the bank upon which it was drawn not later than the mail leaving his post office on the afternoon of Monday, the 2d day of December. It further appears that this train would have reached Ravenswood between 2 and 3 o'clock, so it may be said that it could not have been conveniently presented for payment on that date, but it was the plaintiff's duty to have it presented during business hours on the next day. His failure to have it presented for payment to the bank upon which it was drawn and demand payment thereof within the time above indicated was a failure upon his part to exercise due diligence in the collection of said check. He did not present it within a reasonable time." *Nuzum* v. *Sheppard*, 104 S.E. 587; 11 A.L.R. 1024.

In accordance with the decisions just cited we must hold that, under the circumstances of this case, a delay of sixteen days can not be considered as a reasonable time.

█ The appellant also urges that under a proper interpretation of section 187 of the Uniform Negotiable Instruments Law, *supra*, "in order to discharge a debt paid for with

a check, it is not enough to prove that the said check was not presented for payment within a reasonable time, but there also must coexist the real and positive fact of the loss suf-ferred by the drawer or indorser caused by the delay of the creditor in presenting it for payment. . . ."

The appellant is wrong. In the first place, said section provides that the "drawer will be discharged from liability thereon to the extent of the loss caused by the delay," and does not mention the indorser at all. In the second place, by the weight of authority the indorser of a check, contrary to what happens to the drawer, is discharged from liability in case of an unreasonable delay in presenting the check for payment, irrespective of whether he is in fact injured or not in consequence of such delay. See *Nuzum* v. *Sheppard*, 11 A.L.R. 1024, and the authorities cited in the note to page 1028; 8 C. J. 545, sec. 758, and 5 Uniform Laws Annotated 847, sec. 72.

In the case of *Nuzum* v. *Sheppard, supra,* it was said:

"Checks are not intended to be used as media of exhange. When one gives a check or indorses a check given to him to another, he has a right to expect that such other will present the same for pay-ment promptly, and if he fails to do so he in effect says to the indor-ser, 'I will no longer hold you as a party to this instrument.' If such a check is turned over to one in payment of a debt, it will not ordinarily be held to be a discharge of the debt, but if the holder fails to present it promptly, and to have notice of dishonor given in case the same is not paid, such failure will result in discharging the debt for which it is given." *Nuzum* v. *Sheppard,* 104 S.E. 587, 11 A.L.R. 1024.

The court did not commit the fourth error assigned.

■ Once it has been decided that under the circumstances of the present case, a delay of sixteen days in presenting the check for payment was an unreasonable delay, then the third error assigned lacks any importance. Let us examine it. The defendants-appellees filed their amended answer to the complaint on the same day of the trial held before the dis-

trict court. One of their special defenses, the one marked with letter (*d*) reads in its pertinent part as follows:

". . . And the defendants allege that if the above-mentioned check had been presented within a reasonable time, said check would have been paid in full out of the balance of the checking account of the drawer."

The court, over the objection of the appellant, admitted the testimony of Alfonso Alfonzo, an employee of the Banco de Puerto Rico, and of C. Stewart Graham, manager in September 1932 of the Banco Territorial y Agrícola, to the effect that said bank would have paid on that date any check of Bernardo García presented for payment, even though the drawer would not have had sufficient funds, not only because he was then their correspondent, but also because of his prestige and his financial solvency. The appellant maintains that this testimony was not admissible under the defense marked with letter (*d*), *supra,* and hence that it was a new defense that surprised the plaintiff on the day of the trial. The appellant is mistaken. Her witnesses Eduardo Rodríguez (husband of the plaintiff-appellant) and Gabriel Rodríguez, stated that the check was presented for payment on the 24th and 26th of September 1932, and that the same was not paid because the drawer did not have sufficient funds on deposit. The appellee had a right to impeach and to controvert those statements, and to that end the testimony of Alfonzo and Stewart was perfectly admissible. The court did not err in admitting the same.

The third assignment relates to one of the grounds on which the court based its judgment. But if the decision is correct, the fact that its reasoning is erroneous is not a sufficient ground for reversal. In the case at bar the judgment is fully supported by the evidence, and in these circumstances we would not be justified in disturbing the same.

"And, besides, this error, if it were such, appears only in the opinion of the trial court and not in the judgment. If the judg-

ment is correct the motives on which it is founded may be wrong and still the judgment will stand, as we have frequently decided. Then the first assignment lacks merit sufficient to demand further consideration." *Gandía* v. *Pizá Hermanos, S. en C.,* 17 P.R.R. 780.

"It is not the reasoning which causes the damage or injury by reason of which a party appeals, but the judgment itself." *Alcaide* v. *Morales et al.,* 26 P.R.R. 209. See also *Guilbe* v. *American Railroad Company,* 27 P.R.R. 673.

The judgment appealed from must be affirmed.

Mr. Justice Wolf took no part in the decision of this case.