María Ryan Torres, demandante y apelante, *v.* La Sucesión del Fallecido Agustín Ryan Torres, compuesta de su Viuda Josefina García y de su hijo Raúl Agustín Ryan García, demandada y apelada.

Núm. 7105.—*Sometido:* Febrero 9, 1937.—*Resuelto:* Febrero 26, 1937.

Angel A. Vázquez, abogado de la apelante; F. Fernández Cuyar, abogado de la apelada.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Se trata de una acción en cobro de dinero. Los hechos esenciales pueden resumirse así:

María Ryan Torres, la demandante, vendió a su hermano Agustín, de los mismos apellidos, ciertos derechos y acciones hereditarios. Como parte del precio convenido el comprador entregó a la demandante un pagaré por la suma de $1,500. Agustín Ryan Torres falleció en julio 14, 1932, sin haber hecho efectivo el pagaré, pero reconociendo en su testamento la existencia de la deuda a favor de la demandante. La Sucesión del finado está constituída por su esposa e hijo, que son las personas demandadas en esta acción.

La demandada Josefina García Viuda de Ryan, con el propósito de satisfacer el importe del pagaré otorgado por su difunto esposo, entregó a la demandante en el pueblo de Canóvanas un cheque a cargo del Banco Territorial y Agrícola de Puerto Rico, en San Juan, que dice textualmente:

"Carolina, P. R., 30 de agosto 1932.

"El Banco Territorial y Agrícola de Puerto Rico.

"San Juan, P. R.—Pagará a la orden de Josefina G. Vda de Ryan, $1,500____00/no Un mil quinientos 00/no Dollars con cargo a (Fdo.) Bernardo García.—Depositario de Fondos del Gobierno Insular—No. 243—(Al margen) Bernardo García—Carolina, P. R.

"(Al dorso) Páguese a la Sra. María Ryan en pago de un pa-

garé suscrito por Don Agustín Ryan por igual suma.—Carolina, agosto 30 de 1932.—(Fdo.)  Josefina G. Vda de Ryan—(Fdo.) María Ryan.''

Alega la demandante que el cheque le fué entregado el 8 de septiembre de 1932 y que ella lo presentó al cobro en los días 24 y 26 del mismo mes, pero que no le fué pagado por no tener el librador depositados fondos suficientes en el Banco librado, hecho que comunicó inmediatamente a los demandados; que la demandante aceptó dicho cheque bajo la condición de que el librador Bernardino García tendría hecha provisión de fondos suficientes para el pago del cheque en cualquier tiempo en que fuere presentado al cobro, aun cuando esa presentación se hiciere después de un tiempo razonable; que los demandados, en atención a que el cheque había sido entregado a la demandante nueve días después de librado y que ella residía en Canóvanas, convinieron en que la demandante podría presentarlo al cobro en cualquier tiempo, aun cuando éste fuera excesivo.

En su defensa alegan los demandados que el endoso y la entrega del cheque fueron aceptados incondicionalmente por la demandante, como pago total de la deuda; niegan que la demandante presentara el cheque al cobro durante los días 24 ó 26 de septiembre, 1932, o durante cualesquiera otros días, y niegan que el cheque no fuera pagado por insuficiencia de fondos del librador en el banco librado.  Como defensas especiales alegaron los demandados, que la demanda no aduce hechos suficientes para determinar causa de acción; que el cheque fué endosado en Carolina y entregado a la demandante en Canóvanas, verificándose tanto el endoso como la entrega el día 30 de agosto de 1932; que la demandante fué culpable de demora injustificada o *laches* en la presentación al cobro de dicho cheque, no habiéndolo presentado dentro de un tiempo razonable, por lo cual el cheque quedó perjudicado, surtiendo por tanto los efectos del pago; que desde el 30 de agosto hasta el 21 de septiembre del 1932, el librador del cheque siempre tuvo en el Banco librado fondos en exceso

del importe del cheque, y que si éste hubiese sido presentado al cobro dentro de un tiempo razonable, el Banco lo hubiera pagado en su totalidad del saldo de la cuenta corriente del librador; y por último, que desde el 30 de agosto de 1932 hasta el 29 de septiembre del mismo año, fecha en que el Banco librado cerró sus puertas por insolvencia, el librador tuvo siempre a su favor un balance en exceso de $1,500, por lo que de haber sido presentado al cobro dicho cheque, dentro de un tiempo razonable, hubiera sido pagado en su totalidad. La corte inferior dictó sentencia declarando la demanda sin lugar, y la demandante apeló para ante este tribunal, sosteniendo que en la resolución del caso la corte sentenciadora ha cometido los siguientes errores:

"1. Al ignorar las admisiones de los demandados y en la apreciación de la prueba.

"2. Al permitir a los demandados que establecieran en el acto del juicio, a pesar de la oposición presentada, una defensa de la cual no tenía conocimiento la demandante.

"3. Al tomar como uno de sus varios fundamentos para desestimar la demanda el hecho, no comprobado, de que en la demanda original no se alegaran las condiciones bajo las cuales la demandante aceptó el cheque endosádole.

"4. La sentencia es contraria a la ley, pues ha desestimado la demanda a pesar de que los demandados no están relevados de responsabilidad como endosantes de un cheque no certificado y de que deben y no han pagado a la demandante la cantidad que ella les reclama."

El examen de la evidencia revela que los únicos conflictos por ella presentados fueron, primero, si el cheque fué entregado a la demandante el 30 de agosto o el 8 de septiembre de 1932; segundo, si el endoso y entrega del cheque fueron hechos bajo las condiciones alegadas en la demanda, y tercero, si el cheque fué presentado o no al cobro en septiembre 24 y 26 de 1932. La corte sentenciadora en el ejercicio de su facultad discrecional resolvió que el cheque fué entregado a la demandante el 30 de agosto de 1932; que no hubo convenio alguno en cuanto al endoso y entrega, y que

el cheque no fué presentado al cobro ni el 24 ni el 26 de septiembre de 1932. Sostiene la apelante, al discutir su primer error, que al así resolver la corte esas cuestiones, ignoró las admisiones implícitas (*negative pregnants*) contenidas en la contestación, cuyo juramento era además defectuoso, o lo que es lo mismo, sin juramento, y apreció erróneamente la evidencia.

La cuestión relativa a las admisiones implícitas (*negative pregnants*) y aquélla que se refiere a defectos en el juramento de la contestación no se suscitaron en la corte inferior. Se levantan por primera vez ante este tribunal, en grado de apelación. Si realmente existían esos defectos, la apelante tuvo amplia oportunidad de suscitarlos oportunamente en la corte inferior. Si no lo hizo, aceptó que los hechos alegados en la demanda quedaron debidamente negados y controvertidos en la contestación. No puede quejarse ahora por primera vez de que la corte inferior ignorara aquello que ella aceptó y tuvo por bueno. La misión de la apelante era llamarle oportunamente la atención al juzgador. No tenía ningún derecho a esperar, que al resolver el caso, tuviera el juez en cuenta defectos formales, si es que realmente existen, contenidos en la contestación, que muy bien pudo presumir que fueron renunciados por la apelante. Véanse: *Berríos* v. *Garáu,* 46 D.P.R. 799; *Ana María Sugar Co.* v. *Castro et al.,* 28 D.P.R. 241 (260), y 21 R.C.L. 560, sec. 119, con relación a las admisiones implícitas (*negative pregnants*). Sobre el momento oportuno de levantar cuestiones relativas a defectos en el juramento, consúltense *Ortiz* v. *Silva et al.,* 28 D.P.R. 384; 1 Bancroft, "Code Pleading", 1008, y 65 A.L.R. 972.

Hemos leído cuidadosa y detalladamente la transcripción y opinamos que la corte sentenciadora ha hecho una correcta apreciación de la prueba. Debe desestimarse este error.

■ Alteraremos, por conveniencia, el orden establecido por la apelante en la discusión de los errores señalados. Veamos el que apunta en cuarto y último lugar.

Los preceptos de derecho sustantivo por que habremos de regirnos en el estudio de esta cuestión son los artículos 72, 187 y 193 de la Ley Uniforme de Instrumentos Negociables (núm. 17 de 1930, Leyes de 1930, pág. 173), y el 1124 del Código Civil (Ed. 1930). Transcritos literalmente dichos artículos, dicen así:

"Art. 72.—Cuando el documento no es pagadero mediante demanda de pago, la presentación deberá hacerse el día en que venciere. Cuando lo fuere, la presentación deberá hacerse dentro de tiempo razonable después de su expedición, pero cuando se trate de una letra de cambio, la presentación al pago será suficiente si se hiciere dentro de tiempo razonable después de su última negociación.

"Art. 187.—El cheque deberá presentarse al pago dentro de un tiempo razonable después de su expedición, pues de lo contrario el librador quedará relevado de responsabilidad en cuanto al mismo, hasta el montante de la pérdida causada por la demora.

"Art. 193.—Al determinar lo que es 'tiempo razonable' o 'tiempo excesivo,' deberá tenerse en cuenta la clase del documento, la costumbre, si la hubiere, en el comercio o negocio en lo que respecta a tales documentos, y los hechos del caso concreto.

"Art. 1124.—           .           .           .           .           .           .           .

"La entrega de pagarés a la orden, o letras de cambio u otros documentos mercantiles, sólo producirá los efectos del pago cuando hubiesen sido realizados, o cuando por culpa del acreedor se hubiesen perjudicado."

De acuerdo con los hechos que la corte inferior encontró probados, el cheque le fué entregado a la apelante el 30 de agosto de 1932, y no fué puesto al cobro antes del 29 de septiembre de 1932, fecha en que el banco librado cerró sus puertas por insolvencia.

Explicando la demora en poner al cobro el cheque, Eduardo Rodríguez, esposo de la demandante, declaró que uno o dos días después de entregársele el cheque a su señora, ésta cayó enferma, y así estuvo durante doce o trece días, aunque no la asistió ningún médico, por no ser nada de gravedad. Que desde el 30 de agosto al 24 de septiembre, él vino a San Juan muchas veces, pero que nunca trajo el cheque ni para cobrarlo ni para certificarlo, porque su esposa quería

venir "para retirar sólo una parte de él y abrir una cuenta a su nombre," a pesar de que reconoce que todo eso pudo hacerlo él; que ésos eran deseos de su esposa y que quiso complacerla. Que el 24 vino con ella, y no le pagaron el cheque porque el librador no tenía fondos; que se volvieron a Canóvanas, donde residían, y que a los dos días, el 26, volvió solo a San Juan para cobrar el cheque; que su esposa no vino ese día porque " si no había dinero el 24, lo más seguro era que no hubiera dinero el 26."

Transcurrieron, pues, entre una y otra fecha treinta días, que opinamos no es un plazo razonable, como tampoco lo hubiera sido el de dieciséis días, si aceptáramos, como sostiene la apelante, que el cheque no le fué entregado el 30 de agosto de 1932, sino el 8 de septiembre del mismo año, y que fué presentado al cobro el 24 de septiembre de 1932. La jurisprudencia que citamos a continuación interpreta lo que es un tiempo razonable:

"Sin embargo, si la persona que recibe el cheque y el banco contra el cual se ha librado están en localidades diferentes, el cheque, bajo circunstancias normales, debe ser enviado para su presentación al pago a más tardar al día siguiente de recibido." 8 C. J., p. 542, Sec. 754.

"Un cheque recibido por el demandante a una distancia de 16¾ millas del banco contra el cual se libró debe, en el curso ordinario de los negocios, presentarse al pago a más tardar durante el segundo día después de recibido." *Hamlin* v. *Simpson,* 105 Iowa 125, 74 N. W. 906, 44 L.R.A. 397.

"Si la persona que recibe un cheque y el banco contra el cual se ha librado tal cheque se encuentran en distintas poblaciones, el cheque debe ser enviado para su presentación al pago, ya sea por correo o por cualquier otro medio corriente de transportación, al día siguiente después de ser recibido en el sitio donde la persona que lo recibe vive o hace negocios, si esto es factible; y si no lo es, entonces por el próximo correo que salga después de esa fecha o por cualquier otro medio de transmisión." *Lewis, Hubbard & Co.* v. *Montgomery Supply Co.,* 52 S. E. 1017; 4 L.R.A. (N. S.) 132.

"De acuerdo con nuestra jurisprudencia no puede existir duda alguna de que el demandante no presentó el cheque al banco librado

dentro de un tiempo razonable. El cheque estaba fechado noviembre 30, que era un sábado. Si el banco librado hubiera estado en el mismo pueblo donde vivía el demandante, hubiera sido el deber del demandante presentar el cheque a más tardar al siguiente día laborable después de su fecha, que hubiera sido el lunes siguiente, día 2 de diciembre. El banco contra el cual se libró el cheque no estaba situado en el pueblo donde vivía el demandante, sino en la ciudad de Ravenswood, como a 16 ó 17 millas de distancia. ¿Cuál era, pues, la obligación del demandante? Él estaba obligado a enviar el cheque para su presentación al banco, ya por correo, ya por cualquier otro medio de transportación, al día siguiente de haberlo recibido, si esto podía razonablemente hacerse, y, entonces hacer que fuese presentado al pago no más tarde del día siguiente después del arribo del cheque a la localidad donde había de ser pagado. Ésta es la doctrina sentada por esta corte en los casos de Lewis H. & Co. v. Montgomery Supply Co., 59 W. Va. 75, 4 L.R.A. (N. S.) 132, 52 S. E. 1017, y Pinkney v. Kanawha Valley Bank, 68 W. Va. 254, 32 L.R.A. (N. S.) 987, 69 S. E. 1012, Ann. Cas. 1912-B 115.

"Aplicando esta doctrina a los hechos según los expresa el demandante, encontramos que existía un servicio diario de correos entre el pueblo donde vivía el demandante y Ravenswood, o sea el sitio donde debía pagarse el cheque, cuyo correo salía del pueblo del demandante entre 1 y 2 de la tarde, y llegaba a Ravenswood una hora después. Siendo ello así, era la obligación del demandante enviar el cheque a Ravenswood para ser presentado al banco librado, a más tardar por el correo que salía en la tarde del lunes, día 2 de diciembre. También aparece que este correo hubiera llegado a Ravenswood entre 2 y 3 de la tarde, de modo que puede decirse que el cheque no podría razonablemente haberse presentado al pago en ese día, pero la obligación del demandante era presentarlo durante horas laborables del día siguiente. El dejar de presentarlo al banco librado y de haber reclamado su pago, dentro del tiempo indicado, constituyó una falta de parte del demandante de ejercitar la debida diligencia en el cobro de dicho cheque. No lo presentó dentro de un tiempo razonable." *Nuzum* v. *Sheppard*, 104 S. E. 587; 11 A.L.R. 1024.

De acuerdo con la jurisprudencia citada debemos resolver que, dentro de las circunstancias de este caso, la demora de dieciséis días no puede ser considerada como un tiempo razonable.

■ La apelante entiende, además, que interpretando rectamente el artículo 187 de la Ley Uniforme de Instrumentos

Negociables, supra, "no basta solamente, para que quede extinguida una deuda pagada con cheque, la existencia del hecho creditivo de que no se presentó el cheque al pago dentro de un tiempo razonable, sino que también tiene que coexistir el hecho real y positivo de la pérdida que haya experimentado el librador o el endosante, por la demora del acreedor en la presentación al pago . . . ."

No tiene razón la apelante. En primer lugar, dicho artículo dice que "el *librador* quedará relevado de responsabilidad en cuanto al mismo, hasta el montante de la pérdida causada por la demora," y no menciona al endosante para nada. En segundo lugar, una gran mayoría de las autoridades sostiene que el endosante de un cheque, contrario a lo que sucede con el librador, queda relevado de responsabilidad por demora irrazonable en su presentación al cobro, haya o no sufrido perjuicios como consecuencia de ella. Veanse: *Nuzum* v. *Sheppard*, 11 A.L.R. 1024, y las autoridades en la nota a la página 1028; 8 C. J. p. 545, sec. 758, y 5 "Uniform Laws Annotated," 847, sec. 72.

En *Nuzum* v. *Sheppard*, supra, se dijo:

"Los cheques no son destinados para usarse como moneda de cambio (*media of exchange*). Cuando uno expide un cheque, o endosa a favor de otro un cheque que le ha sido entregado a uno, uno tiene derecho a esperar que tal otra persona presentará el cheque al pago prontamente, y si no lo hace así, él en efecto dice al endosante, 'No lo tendré a usted como parte obligada en este documento.' Si tal cheque se entrega a una persona en pago de una deuda, ordinariamente no se considerará satisfecha la deuda; pero si el tenedor no lo presenta al pago prontamente, y si no da aviso de falta de pago en su caso, tal falta de diligencia tendrá como resultado el que la deuda por la cual se entregó el cheque queda satisfecha." *Nuzum* v. *Sheppard*, 104 S. E. 587, 11 A.L.R. 1024.

No cometió la corte inferior el cuarto error.

■ Una vez resuelto que dentro de las circunstancias de este caso, dieciséis días de demora en presentar al cobro un cheque, es un término irrazonable, el tercer error carece de importancia. Veamos en qué consiste. La demandada ape-

lada presentó su contestación enmendada a la demanda, el mismo día del juicio ante la corte de distrito. Una de sus defensas especiales, la marcada con la letra (*d*), dice en lo que es pertinente:

" . . . Y alega la demandada que si el cheque mencionado hubiera sido presentado al cobro dentro de un tiempo razonable, dicho cheque hubiera sido pagado en su totalidad del saldo de la cuenta corriente del librador."

Con la oposición de la apelante, la corte permitió declarar a Alfonso Alfonzo, empleado del Banco de Puerto Rico, y a C. Stewart Graham, gerente en septiembre de 1932 del Banco Territorial y Agrícola, que dicho banco hubiera pagado en aquella fecha cualquier cheque de Bernardo García que se hubiera puesto al cobro, aun cuando no hubiese tenido el librador fondos suficientes, no sólo porque era entonces su corresponsal, sino por su prestigio y solvencia económica. Sostiene la apelante que esas declaraciones no cabían dentro de la defensa letra (*d*) supra, siendo por tanto una nueva defensa que le tomó por sorpresa el día del juicio. Está en un error la apelante. Sus testigos Eduardo Rodríguez (esposo de la demandante y apelante) y Gabriel Rodríguez, declararon que el cheque fué puesto al cobro el 24 y el 26 de septiembre de 1932, y que no fué pagado por no tener fondos suficientes el librador. La parte apelada tenía derecho a impugnar y desmentir esas declaraciones, y a esos efectos, el testimonio de Alfonzo y de Stewart era perfectamente admisible. No erró la corte al admitirlo.

El tercer error se refiere a uno de los fundamentos que tuvo la corte inferior para dictar la sentencia que dictó. Pero si ésta es correcta, el hecho de que los fundamentos sean erróneos no es motivo para revocar. En el caso de autos la sentencia está ampliamente sostenida por la prueba, y en esas condiciones no estaríamos justificados en alterarla.

"Y además de este error, si así fuera, aparece solamente en la opinión de la corte inferior, y no en la sentencia. Si la sentencia es correcta, y fuesen erróneos sus fundamentos, no obstante esto, dicha

sentencia será válida, según hemos resuelto repetidas veces. Por tanto, el primer error carece de mérito suficiente para que se le considere más detenidamente.'' *Gandía* v. *Pizá Hnos., S. en C.*, 17 D. P.R. 812 (817).

''No son los fundamentos de las sentencias los que propiamente causan perjuicio o agravio determinantes de apelación a una parte sino las sentencias mismas.'' *Alcaide* v. *Morales et al.*, 26 D.P.R. 238. Véase también *Guilbe* v. *American Railroad Co.*, 27 D.P.R. 734.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Wolf no intervino.