José Rodríguez Pérez, demandante, apelante y apelado, *v.* El Municipio de San Juan, Etc., demandado, apelado y apelante.

Núm. 7394.—*Sometido:* Febrero 25, 1938. *Resuelto:* Abril 8, 1938.

*A. Ortiz Toro,* abogado del apelante apelado; *J. Valldejuli Rodríguez,* abogado del apelado apelante.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Se trata de una acción reivindicatoria ejercitada por José Rodríguez Pérez contra el Gobierno de la Capital de Puerto

Rico. Los litigantes, con la aprobación de la corte inferior, estipularon gran parte de los hechos alegados en la demanda y controvertidos en la contestación. Pueden darse, pues, los que siguen, como alegados y admitidos.

El demandante es dueño desde el 5 de junio de 1919 de una finca urbana radicada en la sección norte del barrio de Santurce, del término municipal de San Juan. Consta de una casa de madera techada de hierro galvanizado, con frente a la Avenida Ponce de León, enclavada en un solar de 26 varas por el sur, 34 por el norte y 32 varas y un pie por el este y el oeste. Colinda por el norte con solar de José Rodríguez Pérez; por el sur con la Avenida Ponce de León, a la que da frente; por el este con solar de Ignacio Colón, y por el oeste con la calle Simón Bolívar. Dicha finca consta inscrita a favor del demandante en el registro de la propiedad correspondiente.

En 27 de febrero de 1923 el demandado ocupó, para uso de la comunidad, parte de la referida finca, en la extensión y con los linderos que se dirán, manteniéndose desde entonces en posesión de ella sin justo título y a sabiendas de que pertenece al demandante. La parcela en cuestión ocupa una superficie de 91 metros 37 centímetros cuadrados, y colinda por el norte con la finca principal; por el sur con la Avenida Ponce de León; por el este con solar de Ignacio Colón, y por el oeste con la calle Simón Bolívar.

En cuanto al valor de la faja de terreno detentada, que el demandante fija en $4,068.50 y a los daños causados por la detentación, que el demandante hace subir a $49,502.18, las partes no llegaron a ningún acuerdo, siendo ésas, por tanto, las verdaderas cuestiones de hecho sobre las cuales existe disparidad de criterio entre los litigantes.

En cuanto a la segunda causa de acción, que de dos consta la demanda, el demandado reconoce que el demandante es dueño de una faja de terreno ocupada por el demandado para uso público, que mide 76 metros con 18 centímetros cuadrados de superficie, colindante por el norte con Bernardo Fer-

nández, al sur con la Avenida Ponce de León, al oeste con la calle Simón Bolívar, y al este con el solar de que forma parte, ya descrito como del demandante. Lo estipulado limita la controversia de hechos a si el demandado ocupó dicha parcela desde hace alrededor de 14 años para hacerla formar parte de la calle Simón Bolívar, como alega el demandante, o si por el contrario, está desde hace más de 30 años dedicada al uso público, y a si la parcela detentada vale $3,227.20 ó $457.08 como respectivamente alegan el demandante y el demandado. Quedó además en *issue* si hubo o no mala fe en la ocupación, y el importe de los daños ocasionados por ella, si algunos hubo.

Visto el caso declaró la corte inferior con lugar la demanda, condenando al demandado a pagar al demandante la suma de $8,356.98 por los conceptos que después se dirán, pagando cada parte sus propias costas. No conformes con dicha sentencia, ambas partes apelaron para ante este tribunal. El demandado señala en su alegato dos errores; el demandante los siguientes diez:

"1. Al no resolver que la falta de justo título es evidencia *per se* de la mala fe del detentador.

"2. Al resolver que la teoría de que la falta de título implica la falta de buena fe, si es una teoría aplicable a una corporación política, de ser aplicable al Municipio demandado 'está ya de cambiarse.'

"3. Al resolver que el hecho de ocupar una parcela para una calle el Municipio demandado, cuando por la forma de edificación no se causaba trastorno a la propiedad, no es *per se* evidencia de mala fe.

"4. Al resolver que la ocupación de una parcela del demandante apelante y apelado aun sin justo título no equivale a mala fe en la posesión, equivalente a una usurpación u ocupación de la propiedad sin un debido proceso de ley.

"5. Al sostener que el Municipio demandado tiene en determinadas ocasiones facultad para ocupar fajas o porciones de terreno, porque siendo una entidad de constitución perpetua, tiene siempre el perjudicado el poder o la facultad de ser indemnizado o resarcido de los daños que se le ocasionen.

"6. Al no condenar al Municipio demandado a indemnizar al demandante en la suma de veinticinco mil dólares por no haber podido construir un edificio que tenía proyectado, así como por no haber podido desarrollar y ampliar su negocio.

"7. Al no condenar al demandado a pagar al demandante apelante la suma de dieciséis mil ochocientos sesenta y siete dólares ($16,867) por el costo de ajustar la construcción o reconstrucción del edificio sobre el inmueble que se describe en la demanda, con motivo del cambio de la rasante de la calle llevado a efecto por el demandado sobre la faja de terreno que da a la Avenida Ponce de León.

"8. Al no condenar al Municipio demandado a pagar al demandante por la disfrutación (sic) de la faja que da a la Avenida Simón Bolívar y por las rentas y utilidades que dejó de percibir con motivo de la detentación de dicha faja, estimada en la suma de cinco mil dólares ($5,000).

"9. Al no condenar al Municipio demandado al pago de las costas, desembolsos y honorarios de abogado.

"10. En la apreciación de la prueba y la aplicación de la ley al no justipreciar las fajas de terreno en las Avenidas Ponce de León y Simón Bolívar, en las sumas de $4,068.50 y $3,227.20, respectivamente, que totalizan la suma de $7,295.70."

Creemos innecesaria una extensa discusión de los primeros cinco señalamientos. Cuando la sentencia es correcta, y las razones o fundamentos equivocados, no se causa a la parte querellante agravio o perjuicio alguno que pueda invocar como base de una apelación. Ésta se establece contra la sentencia, para corregir los errores que contenga, y no contra la opinión en que descansa, aun cuando fuere equivocada.

"El tercer error se refiere a uno de los fundamentos que tuvo la corte inferior para dictar la sentencia que dictó. Pero si ésta es correcta, el hecho de que los fundamentos sean erróneos no es motivo para revocar." *Ryan* v. *Sucn. Ryan*, 51 D.P.R. 44, 54, y casos citados.

Las cuestiones que suscita el apelante en sus cuatro primeros señalamientos de error relativas a la buena o mala fe con que el demandado detenta las parcelas de terreno objeto de este litigio, si bien son importantes a los efectos de

adjudicar los frutos, carecen sin embargo de finalidad práctica en este recurso, porque en la sentencia se concede al apelante, no obstante las manifestaciones del juez sentenciador en su opinión, todo cuanto tendría derecho a recibir de un poseedor de mala fe, como veremos. Y si es eso lo que persigue el apelante, ¿qué importa que en su opinión la corte inferior dijera lo que el apelante le atribuye en dichos cuatro primeros señalamientos?

Es cierto que de la opinión emitida en este caso, y especialmente de las frases contenidas en ella que el apelante considera equivocadas, no se desprende que la corte *a quo* considerara al municipio demandado como poseedor de mala fe, pero como a pesar de ello adjudicó los frutos con arreglo al artículo 384 del Código Civil, huelga resolver si se cometieron o no los cuatro primeros errores que como tales señala en su alegato el apelante, pues aun cuando aceptáramos que en ellos incurriera el juez sentenciador, el apelante no adquiriría por eso más derechos de los que le fueron reconocidos. Si el apelante fué indemnizado o no de todos aquellos daños que son reparables dentro del citado artículo 384, lo resolveremos al estudiar otros errores que han sido levantados.

Ese artículo, transcrito literalmente, dispone:

"Artículo 384.—El poseedor de mala fe abonará los frutos percibidos y los que el poseedor legítimo hubiere podido percibir, y sólo tendrá derecho a ser reintegrado de los gastos necesarios hechos para la conservación de la cosa. Los gastos hechos en mejoras de lujo y recreo no se abonarán al poseedor de mala fe; pero podrá éste llevarse los objetos en que esos gastos se hayan invertido, siempre que la cosa no sufra deterioro, y el poseedor legítimo no prefiera quedarse con ellos, abonando el valor que tengan en el momento de entrar en la posesión."

En la sentencia apelada la corte inferior condena al demandado a pagar al demandante la suma de $8,356.98, que se descompone en las siguientes partidas:

"$2,741.10 por la parcela o faja de terreno correspondiente a la Avenida Ponce de León.

"$1,904.50 por la parcela o faja de terreno correspondiente a la calle de Simón Bolívar.

"$3,345.00 como indemnización por los frutos o rendimientos que tales parcelas de terreno han debido producir al demandante y por todo el tiempo que las mismas han estado en posesión del demandado.

"$366.38 por concepto de contribuciones pagadas al Tesoro Insular por las dos parcelas de terreno a que se contrae este pleito.''

La partida de $3,345 como indemnización al demandante por los frutos que las parcelas de terreno han debido producirle, y a la que no tendría derecho de haber la corte considerado al demandado como poseedor de buena fe, claramente demuestra que aquélla tuvo en mente el artículo 384 del Código Civil al dictar la sentencia apelada.

El quinto señalamiento de error, como los otros cuatro que le preceden, se refiere a supuestos errores en la opinión, que de haberse cometido no alterarían la sentencia, y en vista de ello no le daremos mayor consideración.

█ Consideraremos ahora si la corte inferior concedió al demandante toda la indemnización a que tenía derecho, de acuerdo con el citado artículo 384 del Código Civil.

El demandante reclama en su demanda la cantidad de $25,000 "por haberle sido imposible . . . la construcción de un edificio que tenía proyectado y en condiciones de poder construir en y antes de la fecha de la detentación, así como por no haber podido desarrollar y ampliar su negocio''; $16,867 por "ajustar la construcción o reconstrucción del edificio sobre el inmueble . . . con motivo del cambio de la rasante de la calle,'' y $5,000 por "beneficios, rentas, utilidades e intereses sobre'' la faja de terreno que da a la calle Simón Bolívar. La corte estimó que esas partidas eran remotas, especulativas, ilógicas e irrazonables y se negó a concederlas. De ello se queja el apelante en el sexto, séptimo y octavo errores, que examinaremos separadamente.

En cuanto a la de $25,000, estamos de acuerdo con el criterio de la corte inferior. Conceder que el demandante tiene derecho a daños por haberle sido imposible construir un edi-

ficio que tenía proyectado, sería invadir el campo de la conjetura y de la especulación. Concurren hechos futuros cuya exactitud es imposible predecir, tales como importe de los arrendamientos, que fluctúan de acuerdo con el abasto y la demanda y la habilidad para pagarlos; número de locales desocupados y tiempo que permanecen en ese estado; cánones que por una u otra razón no han podido cobrarse, e infinidad de causas varias que no es necesario enumerar.

"Otro error cometido por el árbitro y por la corte se refiere al alcance que debe dársele a la regla de que un poseedor de mala fe está obligado a responder de todo lo que la propiedad poseída puede hacerse producir. No creemos que esta regla requiera del poseedor que cambie el estado de la propiedad. Supongamos, por ejemplo, que una región vasta de terreno virgen, en su casi totalidad, un bosque, puede hacerse producir grandes rendimientos de granos y productos agrícolas si se limpiara el bosque, se arara y se cultivara. ¿Está el poseedor de mala fe—sólo técnicamente, quizá—obligado a responder al verdadero dueño una vez obtenga éste sentencia, de las miles de fanegas de trigo y maíz u otros productos agrícolas que pudieron cultivarse en la tierra? ¿Es el deber de un poseedor, aunque lo sea de mala fe, cambiar la naturaleza del terreno, de virgen a cultivado, agrícola, por ejemplo, o abrir y trabajar una mina de hierro, cobre u oro para derivar de la tierra su mayor rendimiento y entregarlo luego al verdadero dueño? ¿Es que prevalece acaso tal principio de ley? Creemos que no. El cálculo de tales entradas futuras (*undeveloped*) es totalmente especulativo en extremo (*too speculative a matter*). *New Orleans* v. *Gaines,* 131 U. S. 191, 217.

Nada más elocuente para demostrar hasta qué grado puede especularse con esa clase de daños, que los propios cálculos del demandante. Declaró en el juicio que proyectaba la construcción de un edificio a un costo de $45,000, que esperaba le produjera "$800 y pico de pesos" *limpios, mensualmente,* esto es, $9,600 al año. Esa renta limpia representa un poco más del 21 por ciento *limpio* sobre el capital invertido, lo que sería indudablemente una ganancia exagerada y tal vez sin precedentes.

". . . El resto hasta $768.77, o sean $549.12, se reclama, usando las mismas palabras empleadas en la demanda, 'por importe del 25 por ciento sobre 219 dólares 65 centavos que el demandante ha perdido por lo dejado de ganar mensualmente, como producto líquido de dicho dinero en su casa de comercio, desde el 24 de octubre de 1911, hasta la fecha, o sean 18 meses.'

"Prescindiremos de investigar y resolver si existe o no causa de acción con respecto a las partidas de $131.55 y $88.10, limitando nuestro examen a la de $549.12 que se reclama como ganancia dejada de obtener.

"Hemos resumido substancialmente los hechos alegados en la demanda y al referirnos luego a la partida de $549.12, hemos transcrito textualmente la alegación del demandante. Como puede verse de todo ello, no se expone ninguna circunstancia extraordinaria, sino que simplemente se reclama un veinte y cinco por ciento mensual, o sea un trescientos por ciento anual, como producto líquido de la cantidad dejada de percibir por el demandante y de la gastada por él, según sostiene, con motivo de los actos del demandado, empleadas dichas cantidades en la casa de comercio del demandante. Es tan extraordinaria la pretensión del demandante, está tan desprovista de fundamento su reclamación de un *veinte y cinco por ciento mensual,* que es necesario concluir que no tiene causa de acción con respecto a la partida de $549.12." *González* v. *Rosado,* 23 D.P.R. 1.

En *Palou y Sobrino* v. *Dueño et al.,* 15 D.P.R. 570, esta corte se refirió a una solicitud de daños y perjuicios parecida a la presentada en este caso, usando el siguiente lenguaje:

". . . En la cláusula cuarta de la demanda, se enumeran los daños y perjuicios como sigue:

"1. . . . . . . . . . .

"2. Producto de 25 cuerdas de tabaco que se pensaban sembrar en esos terrenos según costumbre de los arrendatarios, $500. . . .

"La segunda partida, o sea la referente a las ganancias que los apelantes hubiesen podido obtener del tabaco, es manifiestamente demasiado inverosímil."

Convenimos con la corte inferior en que los daños reclamados por el indicado concepto son demasiado remotos, especulativos e irrazonables. No existe precepto legal alguno que pudiera justificar la concesión de tales daños.

██ El séptimo error demanda cuidadoso análisis. Al considerar el juez sentenciador la partida de $16,867 reclamada por el demandante como el costo de ajustar el edificio a la nueva rasante establecida en la avenida Ponce de León, estimó que se trataba de daños remotos, especulativos, ilógicos e irrazonables, y los negó. Quizás sea conveniente dejar establecido antes de proseguir, que el examen que hemos hecho de la prueba nos ha llevado al convencimiento de que la diferencia entre el antiguo y el nuevo nivel de la Avenida Ponce de León en el sitio donde radica el solar del demandante, es de un metro y treinta y cinco centímetros.

El artículo 2 de la Ley Orgánica de Puerto Rico dispone que "la propiedad particular no será tomada ni perjudicada para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por la ley." En ausencia de preceptos constitucionales como el citado o de estatutos al mismo efecto, ni la Corte Suprema de los Estados Unidos ni las de los diferentes estados han considerado a una corporación municipal responsable por daños consecuentes (*consequential damages*) causados a un colindante como resultado del cambio de nivel de una calle a menos que mediara negligencia o que el municipio ocupara terreno de dicho colindante. *Dorman* v. *City of Jacksonville,* 13 Fla. 538; *Simmons* v. *City of Camden,* 26 Ark. 276; *Fuller* v. *Atlanta,* 66 Ga. 80; *Wright* v. *City of Wilmington,* 92 N. C. 156; *Reynolds* v. *Mayor, etc., of Shreveport,* 13 La. Ann. 426–428; 5 McQuillin, Municipal Corporations, sec. 2114, pág. 460. La misma doctrina prevalecía y aún subsiste en aquellos estados en que no se ha conferido al perjudicado una causa de acción basada en esos hechos, y cuyas constituciones sólo garantizan que la propiedad particular no sería "tomada" para uso público sin debida compensación. *Northern Transp. Co.* v. *Chicago,* 99 U. S. 635; *City of Kokomo* v. *Mahan,* 100 Ind. 242; *Smith* v. *City of Eau Claire,* 78 Wis. 457. En este último dijo la corte:

"Posiblemente no existe regla de derecho más firmemente establecida que la de que si resultan a un terrateniente daños consecuentes (*consequential damages*) por subir o bajar un municipio el nivel de sus calles, ello no es una ocupación de propiedad privada para uso público dentro del significado de la constitución; y la de que si un municipio actúa por autoridad legal y con cuidado al alterar el nivel, no es responsable de tales daños, excepto por estatuto o por precepto constitucional."

En el año 1870 el Estado de Illinois enmendó su constitución para garantizar no sólo que la propiedad privada no sería "tomada" para uso público a no ser mediante el pago de una justa compensación, sino tampoco "perjudicada" (*damaged*). El ejemplo fué seguido por muchos otros estados, y por el Congreso Federal al redactar y más tarde aprobar nuestra Carta Orgánica. La enmienda trajo como resultado un cambio radical en la jurisprudencia que regula la responsabilidad de las corporaciones municipales al establecer y variar los niveles o rasantes de sus calles y avenidas. En 30 American State Reports 835 se resume así esta nueva situación:

". . . En estados donde este especial precepto constitucional existe, las cortes unánimemente han sostenido que aunque con anterioridad a su promulgación una corporación municipal no incurría en responsabilidad hacia un terrateniente colindante por ningún daño que sufriera debido a actos de la ciudad al establecer o cambiar el nivel de sus calles excepto cuando la propiedad de aquél era en efecto ocupada, sin embargo, bajo tales preceptos constitucionales una ciudad es responsable *por todo daño directo y consecuente* (*consequential*) que surja de sus actos al establecer o cambiar el nivel de las calles a menos que compense dentro de un procedimiento de expropiación forzosa, antes de realizar el trabajo, o a menos que el perjuicio que cause, lo comparta el público en general. (Citas.) Esta regla ha sido sostenida por la Corte Suprema de los Estados Unidos en el caso de *Chicago* v. *Taylor*, 125 U. S. 161, donde la corte concluyó que bajo un precepto constitucional al efecto de que la propiedad privada no sería ocupada o perjudicada para uso público sin una justa compensación, prevalecería una acción en todos aquellos casos donde la propiedad privada hubiere sufrido un perjuicio substancial con motivo del establecimiento o cambio del nivel de una

calle por una ciudad, *aunque esos daños sean por su naturaleza directos o consecuentes (consequential)*; y cuando al establecerse el nivel de una calle o al bajar o subir el que ya existe se causa daño a la propiedad, esa propiedad ha sido perjudicada para uso público dentro del significado de dicho precepto constitucional. *Worth* v. *City of Springfield,* 78 Mo. 107; *McElroy* v. *Kansas City,* 21 Fed. 257.''

En *Reardon* v. *San Francisco,* 66 Cal. 492, 505, la Corte Suprema del Estado dijo:

''. . . El precepto abarca daño a la propiedad privada, incluyendo tierra, y lo que a ella está adherido. Si la tierra o los edificios en ella, o cualquiera de ellos son perjudicados, este precepto requiere que sean compensados. Y si no se ha obtenido compensación al expropiar la tierra para la calle, dentro de un estatuto de expropiación (véanse secciones 237, 1263 Código de Enjuiciamiento Civil, parte tercera, título 8) puede obtenerse en una acción.''

En el de *City of Atlanta* v. *Green,* 67 Ga. 386, se dijo:

''. . . En anteriores constituciones las palabras eran distintas a las de la actual. 'La propiedad privada no será ocupada para uso público sin justa compensación,' eran las palabras usadas corrientemente. Pero bajo la constitución de 1877, se persigue mayor protección hacia la propiedad de los ciudadanos; y ahora 'no será ocupada o perjudicada' para uso público sin justa compensación. *El precepto no determina si los daños han de ser inmediatos y directos o consecuentes (consequential). Cualquier daño a la propiedad para uso público debe ser compensado.*''

En 4 McQuillin, Municipal Corporations, pág. 384, sec. 1599, dicho comentarista se expresa en una nota al calce de la página, del modo siguiente:

''. . . Donde este especial precepto constitucional existe, la regla sobre responsabilidad municipal ha sido cambiada y grandemente ampliada. Sin excepción alguna, las cortes han sostenido que aunque con anterioridad a estos preceptos una corporación municipal no era responsable a un terrateniente colindante por ningún daño sufrido debido a actos de la ciudad al establecer o cambiar el nivel de sus calles, a menos que la propiedad fuera realmente ocupada, bajo tales preceptos una ciudad es responsable de todos los daños directos y consecuentes (*consequential*) que resulten de alteraciones

en el nivel de las calles, cuando el perjuicio así causado exceda del beneficio derivado con el cambio. Desde luego, que es aplicable la misma regla a toda mejora de carácter público.''

La corte de distrito cometió error, pues, al resolver como cuestión de derecho que por consistir la partida de $16,867 de daños remotos, especulativos, ilógicos e irrazonables, no tenía el demandante derecho a recobrarlos. Veamos ahora si con el ensanche de la carretera el demandante sufrió algún perjuicio.

██ La medida de daños en estos casos es la diferencia entre el valor de la propiedad antes y después de la mejora.

''Medida de Daños—Los daños generalmente se regulan por la disminución del valor razonable de la propiedad en el mercado, que ha sido directamente afectada con motivo de la mejora, y se fijan teniendo en cuenta la naturaleza de la mejora y las circunstancias de cada caso, a tenor de la ley aplicable. En otras palabras, la medida de daños que resultan a la propiedad debido a un cambio en el nivel de la calle u otra mejora pública, es la diferencia entre el valor razonable de la propiedad, en el mercado antes de realizarse el trabajo, y el valor después, menos algún beneficio o ventaja especial que resulte. Mc. Quillin, Municipal Corporation, vol. 5, pág. 506, sec. 2139.

En 30 American State Reports 845, se dice:

''. . . La regla se establece en *Parker* v. *Atchison*, 46 Kan. 14, como que es la de que cuando una ciudad cambia el nivel de sus calles, un terrateniente colindante tiene derecho a cualquier daño especial que reciba; y en una acción para recobrarlos, el jurado puede tomar en consideración la condición de la propiedad, la calle, el nivel, y también el valor en el mercado de la propiedad inmediatamente antes y después de la alteración (en el nivel); y cuando la propiedad es perjudicada en su valor, la medida de daños será la diferencia de valor en el mercado, que resulte con motivo del cambio de nivel; y cuando el valor de la propiedad no ha sufrido debido al cambio, no habrá derecho a daños. Los daños deben medirse por la pérdida pecuniaria; y si con motivo del cambio de nivel de la calle con que colinda la propiedad se ha beneficiado tanto como perjudicado, entonces no hay causa de acción. (Citas.) . . . Al determinar si la propiedad se ha beneficiado o no tanto como perjudicado, no debe

considerarse ningún beneficio que sea común a toda otra propiedad. Mientras la medida de daños es la diferencia entre el valor de la propiedad en el mercado, antes y después del establecimiento del nivel, ni la caída de una pared de ladrillos ni la inminente socavación de una casa de viviendas allí situada pueden tomarse en cuenta al estimar los daños.''

En el caso de *Moore* v. *City of Atlanta*, 70 Ga. 611, la corte resolvió:

''. . . si cualquier dueño de propiedad es perjudicado al nivelarse una calle de modo que el valor pecuniario de su propiedad disminuya, él puede recobrar daños por los perjuicios que sufra. Se medirá ese daño por la disminución en el valor actual de su propiedad. Si pecuniariamente el valor no decae, no puede recobrar nada. Si a pesar de que la nivelación le diera mayores facilidades de entrada, su valor como mera residencia hubiera desmerecido, y no obstante, la mejora y aumento de valor producido, fueran iguales a la inconveniencia o incomodidad de la casa como mera residencia, entonces una cosa compensaría la otra y no habría causa de acción. En otras palabras, el derecho a recobrar estribaría en cada caso en la disminución del valor pecuniario o en el mercado de la propiedad, causado por la nivelación.''

Véanse también: *City of Chawneetown* v. *Mason*, 82 Ill. 337; *Lehigh Valley Coal Co.* v. *Chicago*, 26 Fed. 415; *Springer* v. *City of Chicago*, 135 Ill. 553.

Aplicando al caso de autos la regla establecida por la jurisprudencia que acabamos de citar encontramos que en la transcripción de la evidencia no hay base suficiente para fijar la indemnización a que el demandante pudiera tener derecho. El demandante tuvo amplia oportunidad durante el juicio para probar, de acuerdo con la regla citada, la disminución de valor sufrida por la casa y por el solar de su propiedad como consecuencia directa del ensanche y del cambio de nivel en la Avenida Ponce de León. Hemos leído cuidadosamente el testimonio del perito Etienne Totti, testigo del demandante, quien declaró que conocía desde 1913 la casa y solar del demandante; que la casa podrá tener de veinte a veinticinco años de construída y que está hecha de madera de pichipén,

sin madera alguna del país; que estima que en el año 1923 dicha casa tendría un valor de $4,000; que la depreciación anual en las construcciones de madera es de un 4 por ciento; y que la casa del demandante como está actualmente vale $2,500. Nada declaró el testigo en cuanto a la disminución del valor del solar como consecuencia de las obras realizadas por el municipio demandado, en el año 1923.

Dando a la declaración del perito señor Totti el pleno crédito que ella merece, lo único que resulta probado es que la casa en cuestión, valía $4,000 en 1923 y que doce años más tarde, en 1935, en la fecha en que declaraba el perito, el valor de la propiedad se había reducido a $2,500. ¿Se debió esa diferencia de $1,500 en el valor de la casa a las obras del ensanche o a la depreciación anual de 4 por ciento que sufren normalmente las construcciones de madera? En ausencia de prueba en contrario sobre el primer extremo, debemos deducir, de acuerdo con lo declarado por el perito, que la disminución en el valor de la casa fué la consecuencia natural de la depreciación anual de 4 por ciento que normalmente sufren esa clase de edificaciones.

La evidencia introducida por el demandante no justificaría una modificación de la sentencia apelada.

■ Pasemos al octavo error, donde el demandante se queja de que la corte inferior no le diera todas las rentas y utilidades que la parcela que tiene su frente a la calle Simón Bolívar pudo haberle producido. La corte inferior tasó dicha parcela en $1,904.50, y concedió al demandante el 6 por ciento de interés sobre esa suma durante los 12 años que el Gobierno de la Capital la vino detentando. El demandante insiste en que de haber podido construir el edificio que tenía en proyecto, los frutos hubieran ascendido a $5,000. Por las razones aducidas al discutir el sexto señalamiento de error, opinamos que la corte inferior concedió al demandante todo cuanto tenía derecho a recibir.

■ No se equivocó la corte *a quo*, como sostiene el demandante, al no condenar al demandado al pago de las costas,

desembolsos y honorarios de abogado. Las pretensiones del demandante eran tan desmedidas y desproporcionadas, que no fué temerario el demandado al defenderse. En la demanda pedía $63,797.88; la corte le concedió $8,357.28. Es de perfecta aplicación el caso de *García* v. *Fernández,* 52 D.P.R. 183, 190, y por las razones y citas en él consignadas, debe declararse sin lugar este señalamiento.

En cuanto al décimo y último señalamiento, sólo diremos que de la transcripción taquigráfica del récord no surge el manifiesto error de apreciación que el demandante le imputa a la corte sentenciadora al justipreciar de acuerdo con la prueba, las dos parcelas de terreno envueltas en este litigio.

■ Examinemos ahora el recurso interpuesto por el demandado. En su alegato señala dos errores. El primero dice así:

"Haber declarado que el Gobierno de la Capital está obligado a indemnizar al demandante por la tenencia de las dos fajas de terreno indicadas, en la suma de $3,345.00 por concepto de intereses legales."

Se basa el demandado en que, ni en las leyes que crearon el extinto municipio de San Juan, ni en la núm. 99 del 15 de mayo de 1931, estableciendo un gobierno especial para la capital de Puerto Rico, existe "precepto alguno del poder soberano declarando que su criatura de gobierno, el extinto municipio de San Juan y hoy el gobierno de la capital, venga obligado a pagar indemnización por la posesión de tierras dedicadas al uso de la comunidad en forma de intereses sobre el valor mismo de dichos terrenos." El artículo 2 de nuestra Carta Orgánica prohibe, como hemos visto, que la propiedad particular sea *tomada* ni *perjudicada* para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por ley. El Código Civil contiene igual o parecido pronunciamiento. Dice el artículo 282 (ed. 1930):

"Nadie podrá ser privado de su propiedad sino por autoridad competente y por causa justificada de utilidad pública, previa siempre la indemnización correspondiente."

El mismo artículo expresa en su tercer párrafo que:

"La indemnización comprenderá no sólo el valor de la cosa de la cual el propietario es privado, sino que también una remuneración por los daños y perjuicios que se le ocasionen con la privación de la propiedad."

El hecho de que el juez sentenciador fijara en un 6 por ciento sobre el valor de las parcelas detentadas el importe de la indemnización a que el demandante tiene derecho, carece en absoluto de importancia. Establecido el derecho del demandante a "una remuneración por los daños y perjuicios que se le ocasionen con la privación de la propiedad," poco o nada importa, a nuestro juicio, que la corte inferior adoptara como medida para la fijación de la indemnización el interés legal sobre el valor del terreno.

El segundo error señalado dice así:

"Haber decretado que el Gobierno de la Capital venía obligado a pagar al demandante $368.68 por concepto de contribuciones que se dice satisfechas por él."

El demandante alegó y la sentencia de la corte inferior le reconoció su título de dueño sobre las dos parcelas de terreno ocupadas por el municipio para uso público. La corte sentenciadora concedió además al demandante una indemnización por lo que éste dejó de percibir como frutos o beneficios durante el tiempo de la detentación de los inmuebles por el municipio. En otras palabras, la sentencia apelada colocó al demandante en la misma posición legal en que éste se hubiese encontrado en la fecha de la sentencia de no haber ocurrido la detentación ilegal de su posesión. No vemos razón legal alguna que pueda justificar el que se imponga al demandado la obligación de reintegrar al demandante el importe de las contribuciones satisfechas por éste. El demandante satisfizo esas contribuciones como dueño que ha sido, es y continuará siendo de la propiedad, hasta que su valor fijado por la corte le sea satisfecho. La corte inferior erró al condenar al demandado al reintegro de tales contribuciones.

*Por las razones expuestas debe modificarse la sentencia apelada, para dejar sin efecto el pronunciamiento·por el que se impuso al municipio demandado el reintegro de $368.58 por concepto de contribuciones, y así modificada confirmarse.*